UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OREGON REAL ESTATE FORMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN TORMEY,<br><br>Defendant. | Civil Action No.: |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff, Oregon Real Estate Forms, LLC ("OREF" or "Plaintiff"), brings this complaint in the United States District Court for the Southern District of New York against BRIAN TORMEY ("Tormey" or "Defendant"), alleging as follows:

**THE PARTIES**

1. OREF is a Limited Liability Company that creates and licenses real estate transaction forms for use by Oregon real estate professionals. OREF is headquartered in Portland, Oregon.

2. Tormey is an individual who resides in Garrison, New York. Tormey may be served at the following address: 11 Fine Place, Garrison, New York 10524.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant because Defendant has maintained sufficient minimum contacts with the State of New York and as a result the exercise of personal

jurisdiction over Defendant by this Court would not offend traditional notices of fair play and substantial justice.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1400(a) because Defendant or his agent(s) reside or may be found in this district: "A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant."

# FACTS

## I. The Forms at Issue in this Lawsuit

6. On January 1, 2022, OREF created the form, "OREF 081 – Septic Onsite Sewage System Addendum," ("Copyrighted Text 1") copies of which are exhibited below:

OREF
OREGON REAL ESTATE FORMS

SALE AGREEMENT # ________________

RESIDENTIAL

**SEPTIC/ONSITE SEWAGE SYSTEM ADDENDUM**

Buyer(s) ________________

Seller(s) ________________

Property Address or Tax ID # ________________

________________ (the "Property")

**1. DEFINITION OF ONSITE SEWAGE SYSTEMS:** Generally, onsite sewage (or wastewater) systems collect and treat wastewater and sewage from residences that are not connected to public or community systems. They may include gravity flow systems, sand filter systems, alternative technology treatment systems, seepage pits, cesspools, and other disposal systems. In this Septic/Onsite Sewage System Addendum (this "Sewage System Addendum"), those systems are referred to as an "Onsite Sewage System." The Onsite Sewage System on the Property is referred to as the "System." For more information, go to the Oregon Septic Smart website: www.oregon.gov/deq/residential/pages/septic-smart.aspx.

**2. INFORMATION:**

(a) Inspections of Onsite Sewage Systems must be performed by a Department of Environmental Quality ("DEQ") certified professional;

(b) There may be more than one Onsite Sewage System on a property;

(c) Some elements of an Onsite Sewage System might not be located on the property they service; and

(d) Oregon DEQ may require decommissioning of abandoned Onsite Sewage Systems.

**3. SELLER REPRESENTATIONS REGARDING THE SYSTEM:** Seller represents, to the best of Seller's knowledge, that the System serving the Property: (a) is operating properly, and (b) complies with all applicable local, state, and federal laws that were applicable to the System at the time it was installed. These representations are in addition to any others made by Seller in the Sale Agreement, other addenda, and Seller's Property Disclosure Statement.

**4. ONSITE SEWAGE SYSTEM INFORMATION PROVIDED BY SELLER:** Within ____ Business Days (three [3] if not filled in) after the Effective Date, Seller will provide Buyer with all available documentation regarding the System (the "Documents and Information"), including but not limited to the following:

(a) all System inspections/testing done within the last six (6) months;

(b) any proposed new public or community sewage systems or associated assessments;

(c) existing maintenance contracts for the System, which may be a DEQ requirement for sand filter and alternative technology systems; and

(d) any other material information regarding the System.

**5. SYSTEM INSPECTION SERVICES:** The following services will be ordered within ____ Business Days (three [3] if not filled in) after the Effective Date by the party paying for the service: *(select all that apply)*

(a) ☐ Pumping/Cleaning *(specify)* ________________
*(select one)* ☐ Seller ☐ Buyer will pay for service.

(b) ☐ Location/Accessing: If a septic company requires location or digging services at an additional expense in order to pump/clean/inspect, *(select one)* ☐ Seller ☐ Buyer will pay for service.

(c) ☐ Inspections/Test *(specify tank, scope, distribution box, leach lines, full DEQ inspection, etc.)* ________________
*(select one)* ☐ Seller ☐ Buyer will pay for service.

(d) ☐ Other *(specify)* ________________
*(select one)* ☐ Seller ☐ Buyer will pay for service.

(e) ☐ None. Buyer should seek competent professional advice before checking this option. Buyer's right to terminate this transaction based upon any test report showing a substantial deficiency in the System are described in Section 6 (Buyer's Right to Terminate Transaction). Buyer should review them carefully.

The party responsible for payment for a service that causes material damage will restore the Property following the completion of that identified service.

Buyer Initials ________ / ________ Date ________________     Seller Initials ________ / ________ Date ________________

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 081 | Released 07/2024 | Page 1 of 2**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

SAMPLE

OREF

SALE AGREEMENT # ________________

RESIDENTIAL

## SEPTIC/ONSITE SEWAGE SYSTEM ADDENDUM

Buyer will not provide all or any portion of the System inspection reports to Seller unless requested by Seller, but if Seller requests all or a portion of a report during this transaction or within thirty (30) calendar days following termination, Buyer will promptly comply.

**6. BUYER'S RIGHT TO TERMINATE TRANSACTION:** Within ____ Business Days (five [5] if not filled in) after Buyer's receipt of all written reports from Buyer's and Seller's tests, Buyer will have the right to terminate this transaction by delivering to Seller OREF 109 – Notice from Buyer to Seller together with a list of substantial deficiencies identified by Buyer. Seller will have ____ Business Days (two [2] if not filled in) after those deliveries to negotiate a written agreement covering the method, cost, and financial responsibility for correcting the substantial deficiencies identified by Buyer (the "Septic Negotiation Period"). Buyer and Seller will not be obligated to reach any agreement about the deficiencies identified. If Buyer and Seller do not reach agreement by 5:00 p.m. on the last day of the Septic Negotiation Period, all Deposits will be promptly refunded to Buyer, and this transaction will terminate. Termination of this transaction will not excuse either party from paying for any service they agreed to be responsible for in Section 5 (System Inspection Services).

**7. BUYER'S ACKNOWLEDGMENT:** The Closing of this transaction will be Buyer's acknowledgment that Buyer is satisfied with all Documents and Information received. When reviewing the Documents and Information, Buyer should keep in mind that the condition of the System may change after it has been inspected. All Documents and Information and other such information should be viewed in this light. Buyer acknowledges, Buyer has not received or relied upon any oral or written statements regarding the System made by Seller or any real estate agent not expressly contained in the Sale Agreement or this Sewage System Addendum. Seller's and Buyer's Agents are not experts in Onsite Sewage Systems and should not be relied upon to provide opinions, advice, or information concerning their current condition or future performance.

Buyer ________________ Print ________________ Date ____________ ______ ☐ a.m. ☐ p.m. ←

Buyer ________________ Print ________________ Date ____________ ______ ☐ a.m. ☐ p.m. ←

Seller ________________ Print ________________ Date ____________ ______ ☐ a.m. ☐ p.m. ←

Seller ________________ Print ________________ Date ____________ ______ ☐ a.m. ☐ p.m. ←

Buyer's Agent(s) ________________________ Seller's Agent(s) ________________________

SAMPLE

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 081 | Released 07/2024 | Page 2 of 2**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

7. Each page of Copyrighted Text 1 includes the "OREF" logo.

8. Each page of Copyrighted Text 1 includes the following text: "No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022."

9. On January 1, 2022, OREF created the form, "OREF 081 – Residential Real Estate Sale Agreement," ("Copyrighted Text 2") (together with Copyrighted Text 1 "OREF's Copyrighted Texts") copies of which are exhibited below:

OREF
OREGON REAL ESTATE FORMS

SALE AGREEMENT # ____________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

### FINAL AGENCY ACKNOWLEDGMENT

Both Buyer and Seller acknowledge having received the Oregon Real Estate Agency Initial Agency Disclosure Pamphlet, and hereby acknowledge and consent to the following agency relationships in this transaction.

**Buyer's Agent(s) Information:**

Buyer's Agent 1*: ____________ Oregon License #: ____________
is the agent of: (*select one*) ☐ Buyer exclusively ("Buyer Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency")
Name of Real Estate Firm*: ____________ Firm License #: ____________
Buyer's Agent 1's Office Address: ____________
Phone #1: ____________ Phone #2: ____________ E-mail: ____________

Buyer's Agent 2*: ____________ Oregon License #: ____________
is the agent of: (*select one*) ☐ Buyer exclusively ("Buyer Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency")
Name of Real Estate Firm*: ____________ Firm License #: ____________
Buyer's Agent 2's Office Address: ____________
Phone #1: ____________ Phone #2: ____________ E-mail: ____________

**Seller's Agent(s) Information:**

Seller's Agent 1*: ____________ Oregon License #: ____________
is the agent of: (*select one*) ☐ Seller exclusively ("Seller Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency")
Name of Real Estate Firm*: ____________ Firm License #: ____________
Seller's Agent 1's Office Address: ____________
Phone #1: ____________ Phone #2: ____________ E-mail: ____________

Seller's Agent 2*: ____________ Oregon License #: ____________
is the agent of: (*select one*) ☐ Seller exclusively ("Seller Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency")
Name of Real Estate Firm*: ____________ Firm License #: ____________
Seller's Agent 2's Office Address: ____________
Phone #1: ____________ Phone #2: ____________ E-mail: ____________

*If Buyer's and/or Seller's Agents and/or Firms are co-selling or co-listing in this transaction, all Agents and Firm names should be disclosed above or in an attached OREF 010 – Final Agency Acknowledgment Addendum.

If both Parties are each represented by one or more Agents in the same Real Estate Firm, and Agents are supervised by the same authorized principal broker in that Real Estate Firm, Buyer and Seller acknowledge the authorized principal broker will become the disclosed limited agent for both Buyer and Seller as more fully explained in the Disclosed Limited Agency Agreements that have been reviewed and signed by Buyer, Seller, and Agent(s).

Buyer will sign this acknowledgment at the time of signing this Agreement before submission to Seller. Seller will sign this acknowledgment at the time this Agreement is first submitted to Seller, even if this Agreement will be rejected or a counteroffer will be made. Seller's signature to this Final Agency Acknowledgment will not constitute acceptance of this Agreement or any terms in this Agreement.

Buyer ____________ Date ________ ← Buyer ____________ Date ________ ←
Print ____________ Print ____________

Buyer ____________ Date ________ ← Buyer ____________ Date ________ ←
Print ____________ Print ____________

Seller ____________ Date ________ ← Seller ____________ Date ________ ←
Print ____________ Print ____________

Seller ____________ Date ________ ← Seller ____________ Date ________ ←
Print ____________ Print ____________

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 1 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

SAMPLE

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

### SALE AGREEMENT GENERAL TERMS

This Agreement is intended to be a legal and binding contract. If it is not understood, seek competent legal advice before signing. For an explanation of the capitalized terms and the legal concepts applicable to this Agreement, review Section 48 (Definitions) and Section 49 (Miscellaneous). No changes or alterations are permitted to any portion of the pre-printed format or text of this form. Any such proposed changes or alterations must be made on a separate document.

**1. PARTIES/PROPERTY DESCRIPTION/PRICE:** Buyer (*insert name[s]*) ________________________________________________
________________________________________________________________________________
offers to purchase from Seller (*insert name[s]*) ________________________________________________
________________________________________________________________________________
the following described real property (the "Property") situated in the State of Oregon, County of ______________________, and commonly known or identified as: (*complete one or more*)

(a) Street Address: ________________________________________________________________
________________________________________________________________________; and
(*If the above address does not adequately describe the Property, include the Tax Identification Number and/or other identifying information.*)

(b) Tax Identification Number(s): ________________________________________________; and

(c) Other Identifying Information (lot/block number, etc.): ________________________________________
________________________________________________________________________.

If a complete legal description of the Property is not included in this Agreement, Buyer and Seller will use the legal description provided by Escrow, defined in Section 30 (Escrow), for purposes of legal identification and conveyance of title.

Buyer offers to purchase the Property in U.S. currency for (the "Purchase Price") ........................................ A $______________
on the following terms:
as earnest money, the sum of (the "Deposit") ........................................ B $____________
in accordance with Section 31.2 (Additional Deposit), the sum of (the "Additional Deposit") ................ C $____________
at or before Closing, the balance of the down payment ........................................ D $____________
at Closing and on Delivery of the ☐ deed ☐ contract, the balance of the Purchase Price ........................................ E $______________
will be paid as agreed to in the Financing Sections in this Agreement. (*the sum of Lines B, C, D, and E must equal Line A*)

**2. ATTACHED ITEMS AND PERSONAL PROPERTY:** Items identified as included or excluded in the Multiple Listing Service or marketing materials will not be included in or excluded from the sale unless agreed to in writing.

**2.1. Attached Items.** Listed below are examples of attached items.

(a) **Fixtures.** A fixture is any personal property that is attached to real property. Fixtures include built-in appliances, floor coverings, blinds, curtain rods, lighting and bulbs, awnings, window and door screens, and storm doors and windows.

(b) **System components.** A system component is essential related equipment. System components include irrigation, plumbing, water heaters, ventilation, cooling and heating, Smart Home Features, and all fixtures and their related items, including remote controls, operating manuals, passwords, and all keys related to the property, including mailbox and outbuilding(s).

(c) **Other attached items.** Other attached items include fences, gates, and planted landscaping items.

All attached items are included except: (*describe*) ________________________________________________
________________________________________________. For additional excluded items, see Addendum ____________.

All mounting brackets (*select one*) ☐ will ☐ will not remain with the Property except for (*describe*) ______________________________
________________________________________________________________________________.

All bathroom mirrors (*select one*) ☐ will ☐ will not remain with the Property except for (*describe*) ______________________________
________________________________________________________________________________.

Buyer Initials _______ / _______ / _______ / _______

Seller Initials _______ / _______ / _______ / _______

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 2 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

SAMPLE

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

**2.2. Personal Property.** Personal property refers to objects not permanently attached to the Property. This includes but is not limited to free-standing furniture (which may be secured for safety reasons by anti-tip devices), free-standing appliances (like slide-in refrigerators and ranges), and hanging items (such as artwork, decorative items, and other portable items). Only the following personal property, which is offered AS-IS and without any stated value, is included in the sale: (*describe*) ________________________________________________ ________________________________________________. For additional personal property, see Addendum ___________.

### FINANCING

**3. FINANCING TYPE:** Financing for this transaction (*select one*)

(a) ☐ is not necessary because Buyer will use Buyer's own funds to pay the full Purchase Price (an "All-Cash Transaction") (*complete Section 7, All-Cash*);

(b) ☐ will be sought by Buyer from a third-party lender (a "Financed Transaction") (*complete Section 8, Financed*); or

(c) ☐ will be provided by the Seller (a "Seller-Carried Transaction") (*complete Section 9, Seller-Carried Financing*).

Is this transaction contingent on an appraisal? (*select one*) .................................................. ☐ Yes ☐ No
If No, Section 6 (Appraisal Contingency) does not apply.

**4. BUYER REPRESENTATION OF FUNDS:** In this section: (a) "Funds" means the funds required for Closing of the Property, whether they are the Deposits, down payment, or (if this is an all-cash transaction) the full Purchase Price, but "Funds" does not include the financing described in Sections 8 (Financed) or 9 (Seller-Carried Financing) of this Agreement; and (b) "Liquid" means Funds that are cash or immediately convertible to cash that are available to Buyer. Buyer represents that, upon signing this Agreement: (*select only one*)

(i) ☐ all Funds are Liquid;

(ii) ☐ Not all Funds are Liquid; however, all Funds will be Liquid before Closing. This transaction is not contingent upon Buyer obtaining the following non-contingent Funds before Closing (for example 401K Disbursements): (*identify source of non-liquid Funds*) ________________________________________________; or

(iii) ☐ This transaction is contingent upon Buyer obtaining Liquid Funds in accordance with the following contingency: (*describe*) ________________________________________________ ________________________________________________ ________________________________________________ ________________________________________________. For additional contingency details, see Addendum ___________.

**5. SELLER CONTRIBUTIONS:** Seller will pay the following amount(s) at Closing: (*select all that apply*)

(a) ☐ **Buyer's Agent's Compensation.** Compensation to Buyer's Agent's Firm in the amount of (*select and complete one*) ☐ $___________ or ☐ _____% of the Purchase Price. Except as expressly provided in this Agreement or other written agreements, payment of compensation does not modify any obligation to pay compensation to a real estate agent or modify or create any agency relationships between any parties. Buyer's Agent's Firm is intended to be a third-party beneficiary of this section.

(b) ☐ **Closing Costs.** (*select and complete one*) ☐ $___________ or ☐ _____% of the Purchase Price for Buyer's appraisal and inspection fees, recording fees, loan origination fees, mortgage interest, interest rate buydown, and discount points, title and escrow costs, HOA fees, and assessments, homeowner and mortgage insurance, down payment assistance programs, Buyer's portion of property taxes, transfer taxes and other closing costs, and prepaid expenses.

(c) ☐ **Other.** (*describe*) ________________________________________________ ________________________________________________.

After the Effective Date, the parties will document any changes to the terms of this section using OREF 048 – Seller Contributions Addendum.

Buyer and Seller are advised to review OREF 047 – Advisory Regarding Real Estate Compensation for information about how real estate compensation works and the choices available when hiring a real estate agent.

Buyer Initials _______ / _______ / _______ / _______

Seller Initials _______ / _______ / _______ / _______

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 3 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF OREGON REAL ESTATE FORMS

SALE AGREEMENT # _______________

RESIDENTIAL

# RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

**6. APPRAISAL CONTINGENCY:** The following describes Buyer's contingency for having the Property appraised. See Section 8.1 (Loan Contingency) for Buyer's Loan Contingency.

**6.1. Appraisal Contingency Deadline.** Buyer will have _____ Business Days (twenty [20] if not filled in) after the Effective Date (the "Appraisal Contingency Deadline") to have the Property appraised by Lender's appraiser (or Buyer's appraiser, if there is no Lender) and complete all negotiations with Seller regarding the appraisal.

**6.2. Failure of Appraisal Contingency.** If the appraisal report is not received by the Appraisal Contingency Deadline, or if the appraiser determines that the value of the Property is less than the Purchase Price, or if the appraised value of the Property is conditioned upon the completion and approval of the appraiser's conditions, Buyer will promptly Notify Seller and will have _____ Business Days (two [2] if not filled in) following the date of Buyer's Notice to Seller to either:

(a) reach a written agreement with Seller on price and terms that will permit this transaction to continue;

(b) waive the Appraisal Contingency (for more information about waiving contingencies, see OREF 098 – Advisory to Buyer Regarding Waiving Contingencies); or

(c) terminate this transaction by Delivering OREF 057 – Termination Agreement and Deposit Disbursement Instructions, in which event all Deposits will be promptly refunded to Buyer. Parties agree to sign all forms required by Escrow.

**6.3. Appraisal Reinspection.** If an appraisal reinspection is required due to Seller's breach of this Agreement, Seller will promptly reimburse Buyer for any appraisal reinspection fee Buyer incurs.

**7. ALL-CASH:** Buyer will provide verification ("Verification") of readily available funds as follows: (*select one*)

(a) ☐ Buyer has attached the Verification to this Agreement;

(b) ☐ Buyer will provide Seller with the Verification within _____ Business Days (three [3] if not filled in) after the Effective Date; or

(c) ☐ Other: (*describe*) _______________________________________________.

If the Verification is not attached to this Agreement, Seller may Notify Buyer, in writing, of Seller's unconditional disapproval of the Verification within _____ Business Days (two [2] if not filled in) ("Disapproval Period") following its receipt by Seller. Provided, however, such disapproval must be objectively reasonable. Upon such disapproval, all Deposits will be promptly refunded to Buyer, and this transaction will be terminated.

If Seller fails to provide Buyer with written unconditional disapproval of the Verification by 5:00 p.m. on the last day of the Disapproval Period, Seller will be deemed to have approved the Verification. If Buyer fails to submit a Verification within a time frame selected above, unless the Parties agree otherwise in writing, all Deposits will be promptly refunded, and this transaction will be terminated.

**8. FINANCED:** The balance of the Purchase Price will be financed through one of the following loan programs: (*select only one*)

(a) ☐ Conventional;

(b) ☐ FHA;

(c) ☐ Federal VA. Seller (*select one*) ☐ will ☐ will not agree to pay Buyer's non-allowable VA fees.
If FHA or Federal VA is selected, Buyer may attach OREF 097 – VA/FHA Amendatory Clause and Real Estate Certification to this Agreement;

(d) ☐ Other: (*describe*) _______________________________________________.

Buyer will seek financing through a lending institution or mortgage broker (collectively, "Lender") participating in the loan program selected above.

Pre-Approval Letter. (*select one*)
(i) ☐ Buyer has attached a pre-approval letter from Buyer's Lender (a "Pre-approval Letter") to this Agreement;
(ii) ☐ Buyer will provide Seller with the Pre-approval Letter within _____ Business Days (three [3] if not filled in) after the Effective Date;
(iii) ☐ Other: (*describe*) _______________________________________________.

**8.1. Loan Contingency.** Buyer's obligation to purchase the Property is contingent upon Buyer and Property qualifying for the loan from the Lender (the "Loan Contingency") within _____ Business Days (twenty [20] if not filled in) following the Effective Date (the "Loan Contingency Deadline"). This Loan Contingency is separate from Buyer's rights with respect to appraisal of the Property, which are in Section 6 (Appraisal Contingency).

Buyer Initials _______ / _______ / _______ / _______ Seller Initials _______ / _______ / _______ / _______

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 4 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

SALE AGREEMENT # ________________

RESIDENTIAL

# RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

**8.2. Failure of Loan Contingency.** If full loan approval is not received by the Loan Contingency Deadline or Buyer receives written notification from Lender that the Loan Contingency has failed or otherwise cannot occur, Buyer will promptly Notify Seller and will have _____ Business Days (two [2] if not filled in) following the date of Buyer's Notice to Seller to either:

(a) reach a written agreement with Seller on price and terms that will permit this transaction to continue;

(b) waive the Loan Contingency (for more information about waiving contingencies, see OREF 098 – Advisory to Buyer Regarding Waiving Contingencies); or

(c) terminate this transaction by Delivering OREF 057 – Termination Agreement and Deposit Disbursement Instructions, in which event all Deposits will be promptly refunded to Buyer. Parties agree to sign all forms required by Escrow.

**8.3. Buyer's Obligations Regarding Financing.** Buyer represents to and agrees with Seller as follows:

(a) Not later than _____ Business Days (three [3] if not filled in) following the Effective Date, Buyer will submit to the Lender who provided the Pre-approval Letter a completed loan application for purchase of the Property. A completed loan application will include the following information: (i) Buyer's name(s), (ii) Buyer's income(s), (iii) Buyer's social security number(s), (iv) the Property address, (v) an estimate of the value of the Property, and (vi) the loan amount sought.

(b) If Buyer is satisfied with the Loan Estimate offered by Buyer's Lender, Buyer will notify Lender within _____ Business Days (three [3] if not filled in – but not to exceed ten [10]) following Buyer's receipt of Lender's Loan Estimate. At Seller's request, Buyer will promptly Notify Seller of the date of Buyer's signed notice of intent to proceed with the Loan.

(c) After Buyer notifies Lender of Buyer's intent to proceed with the Loan, Buyer will complete all paperwork requested by the Lender, including payment of all application, appraisal, and processing fees, to obtain the Loan.

(d) Buyer will not replace the Lender or loan program selected in Section 8 (Financed) without Seller's written consent, which may be withheld at Seller's sole discretion.

(e) Following submission of Buyer's loan application, Buyer will keep Seller promptly informed of all material non-confidential developments regarding Buyer's financing and the time of Closing.

(f) Buyer authorizes Buyer's Lender to provide non-confidential information to Buyer's and Seller's Agents regarding Buyer's loan application status.

**9. SELLER-CARRIED FINANCING:** If the Seller is financing all or a portion of the Purchase Price through a land sale contract, promissory note and trust deed/mortgage, option, or lease-to-own agreement, Buyer and Seller are advised to review the OREF 032 – Advisory Regarding Seller-Carried Transactions. Buyer and Seller will: (*select only one*)

(a) ☐ use the OREF 033 – Seller-Carried Transaction Addendum and related forms; or

(b) ☐ secure a mortgage loan originator ("MLO") or legal counsel to negotiate and draft the necessary documents.

Regardless of the option selected above, Seller and Buyer will reach a signed written agreement specifying the terms and conditions of such financing (for example, the down payment, interest rate, amortization, term, payment dates, late fees, and balloon dates) within _____ Business Days (ten [10] if not filled in) after the Effective Date ("Negotiation of Terms Period"). If Buyer and Seller fail to reach an agreement by 5:00 p.m. on the last day of the Negotiation of Terms Period, all Deposits will be refunded to Buyer, and this transaction will be automatically terminated. Oregon law requires, unless exempted, that individuals offering or negotiating the terms must be an Oregon-licensed attorney or hold an MLO license. Real estate agents are not qualified to provide these services or give advice in this regard. Legal advice is strongly recommended.

**10. ADDITIONAL FINANCING PROVISIONS:** For buyer's agent compensation or closing costs use Section 5 (Seller Contributions). (*describe*)
______________________________________________________________________
______________________________________________________________________
______________________________________________________________________. For more financing provisions, see Addendum ______________.

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 5 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

### DUE DILIGENCE

**11. TITLE INSURANCE:** Within one (1) Business Day after the Effective Date, Seller will order from Escrow a preliminary title report and copies of or links to all documents of record (the "Report and Documents") for the Property. The Parties instruct Escrow to Deliver the Reports and Documents to Buyer as soon as the Reports and Documents are available. If the Report and Documents are not fully understood, Buyer should contact Escrow for further information or seek competent legal advice. Buyers' and Sellers' Agents are not qualified to advise on title issues.

Following Delivery of the Report and Documents, and following Delivery of each supplement to the Reports and Documents that contains material information previously unknown to Buyer, Buyer will have _____ Business Days (five [5] if not filled in) within which to Notify Seller and Escrow, in writing, of any unacceptable matters disclosed in the Report and Documents (the "Objections"). Buyer's failure to timely object in writing will be deemed acceptance of the Report and Documents. However, Buyer's failure to timely object will not relieve Seller of the duty to convey marketable title to the Property as described in Section 34 (Deed). If within _____ Business Days (five [5] if not filled in) following Seller's receipt of the Objections, Seller fails to remove or correct any of the Objections, or fails to give written assurances reasonably satisfactory to Buyer of removal or correction before Closing, all Deposits will be promptly refunded to Buyer and this transaction will be terminated unless Buyer waives this contingency in writing. Within thirty (30) Calendar Days after Closing, Escrow will furnish to Buyer at Seller's sole expense an owner's standard form policy of title insurance insuring that Buyer has marketable title to the Property in the amount of the Purchase Price, free and clear of the Objections, if any, and all other title exceptions agreed to be removed as part of this transaction.

**12. SUITABILITY AND INSPECTIONS:** Buyer understands it is advisable to have inspections of the Property conducted by qualified licensed professionals and to complete thorough due diligence regarding the suitability of the Property for Buyer's needs. Real estate agents are not qualified to conduct such due diligence and inspections; however, they may provide names and contact information of inspectors, consultants, and experts. Buyer should thoroughly vet the qualifications, licensing, and insurance of any professionals before retaining them.

Buyer is advised to review OREF 058 – Advisory to Buyer Regarding Due Diligence. If Buyer has any health or safety concerns, Buyer is encouraged to secure the services of a licensed professional inspector, consultant, or health expert for information and guidance. For further information, review the website of the Oregon Public Health Division at www.public.health.oregon.gov.

*If the transaction requires a suitability contingency, select and complete Section 12.1. In Section 12.2, identify whether or not an inspection contingency applies to this transaction.*

**12.1.** ☐ **Suitability Contingency.** If Buyer is not satisfied with the Property's suitability for Buyer's intended use, saleability, cost of casualty/property/flood insurance, zoning, or land use restrictions, Buyer may unconditionally disapprove of the Property by delivering OREF 064 – Notice of Buyer's Unconditional Disapproval to Seller within _____ Business Days (ten [10] if not filled in) after the Effective Date (the "Suitability Period"). This transaction will terminate upon Delivery of that Notice, and all Deposits will promptly be refunded to Buyer.

**12.2. Inspections or Waiver of Inspections.** The selection below does not apply to OREF 081 – Septic/Onsite Sewage System or OREF 082 – Private Well Addendum if attached. (*select only one*)

(a) ☐ **Inspection Contingency.** At Buyer's expense, Buyer may have the Property inspected by one or more licensed professionals of Buyer's choice ("Professional Inspections"). Inspections that include testing or removal of any portion of the Property (for example, radon and mold) may not be performed except for the following: (*identify invasive inspections*) ________________________________________________
________________________________________________________________________.

Buyer will restore the Property following any inspections or tests performed by Buyer.

(i) **Inspection Period.** Buyer will have _____ Business Days (ten [10] if not filled in) after the Effective Date (the "Inspection Period"), in which to complete all inspections and negotiations with Seller regarding any matters discovered. Buyer will not provide all or any portion of the inspection reports to Seller unless Seller delivers Notice to Buyer requesting reports; but if Seller requests in writing, using OREF 110 – Notice from Seller to Buyer, all or a portion of a report during this transaction or within thirty (30) Calendar Days following termination, Buyer will promptly comply.

(ii) **Repairs/Corrective Action.** During the Inspection Period, Buyer may request repairs or corrective action using OREF 022A – Buyer's Repair Addendum. Seller is not required to modify any terms of this Agreement.

(iii) **Disapproval.** At any time during the Inspection Period, unless repairs or corrective actions have been agreed upon, Buyer may give Notice to Seller of Buyer's unconditional disapproval of the Property based on the Professional Inspections, using OREF 064 – Notice of Buyer's Unconditional Disapproval, and all Deposits will be promptly refunded, and this transaction will be terminated. If (1) Buyer and

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________

SAMPLE


No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ______________

RESIDENTIAL

# RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

Seller do not agree on repairs or corrective action, and (2) Buyer does not provide Seller with Notice of unconditional disapproval using OREF 064 – Notice of Buyer's Unconditional Disapproval by 5:00 p.m. on the final day of the Inspection Period, Buyer will be deemed to have accepted the condition of the Property AS-IS.

(b) ☐ **Buyer's Waiver of Inspection Contingency.** Buyer represents to Seller, Agents, and Firms that Buyer is fully satisfied with the condition of the Property and its elements and systems, and knowingly and voluntarily elects to waive the right to have any inspections performed as a contingency to the Closing of the transaction. At Buyer's expense, Buyer may have the Property inspected by one or more licensed professionals of Buyer's choice for informational purposes only. Buyer must specifically identify in this Agreement any desired invasive inspections that may include testing or removal of any portion of the Property (for example, radon and mold). (*identify invasive inspections*)

______________________________________________________________________________

______________________________________________________________________________.

Buyer will restore the Property following any inspections or tests performed by Buyer. Buyer will have _____ Business Days (ten [10] if not filled in) after the Effective Date in which to complete all inspections.

(c) ☐ **Buyer's Waiver of Inspections and Inspection Contingency.** Buyer represents to Seller, Agents, and Firms that Buyer is fully satisfied with the condition of the Property and its elements and systems, and knowingly and voluntarily elects to waive the inspection contingency and the right to have any inspections. Buyer's waivers are solely Buyer's decision and at Buyer's own risk.

(d) ☐ **Other Inspection Addendum.** (*specify*) ______________________________________________

**13. PRIVATE WELL:** Does the Property include a well that supplies ground water for human consumption? (*select one*) ............... ☐ Yes ☐ No
If Yes, Buyer has attached OREF 082 – Private Well Addendum to this Agreement.

**14. SEPTIC/ONSITE SEWAGE SYSTEM:** Does the Property include a septic/onsite sewage system? (*select one*) ...................... ☐ Yes ☐ No
If Yes, Buyer has attached OREF 081 – Septic/Onsite Sewage System Addendum to this Agreement.

**15. LEAD-BASED PAINT:** Was the Property constructed before 1978? (*select one*) ........................................................... ☐ Yes ☐ No
If Yes, Seller will, within one (1) Business Day after the Effective Date, Deliver to Buyer OREF 021 – Lead-Based Paint Disclosure Addendum together with the EPA Pamphlet entitled "*Protect Your Family From Lead in Your Home*" and all information, records, and reports available to Seller pertaining to the lead-based paint and/or lead-based paint hazards on the Property. Parties are advised to review OREF 018 – Advisory Regarding Lead-Based Paint.

**16. SELLER'S PROPERTY DISCLOSURE STATEMENT:** Oregon law requires Seller to sign and Deliver a complete seller's property disclosure statement in the form described in ORS 105.464 (the "SPDS") to Buyer. Buyer has a right to revoke Buyer's offer (the "Revocation Right") unless this transaction is exempt, or Buyer has waived the Revocation Right, or this transaction has closed. Buyer may exercise the Revocation Right only by delivering a signed written statement of revocation to Seller disapproving the SPDS. The revocation statement may be delivered before Seller delivers the SPDS to Buyer, or within five (5) Business Days after Seller delivers the SPDS to Buyer (the "Revocation Period"). If Seller Delivers the SPDS to Buyer before the Effective Date, the Revocation Period will begin on the Effective Date instead of beginning on any other date determined by any law, statute or rule.

## CONDITION AND COMPONENTS OF THE PROPERTY

**17. HOMEBUYER PROTECTION ACT:** Construction liens can be filed by contractors and building material suppliers for new construction, additions, and remodeling projects. Construction liens filed after Closing could expose buyers to liability for costs that sellers should pay before Closing. Oregon's Homebuyer Protection Act requires sellers to protect buyers against these liens. If the Property is a single-family residence, condominium unit, or 2-4 dwelling building, and more than fifty thousand dollars ($50,000) in improvements are completed at the Property during the ninety (90) Calendar Days before Closing, Seller will, at or before Closing, complete and Deliver to Buyer the "Notice of Compliance with the Homebuyer Protection Act" provided by the Oregon Construction Contractors Board.

**18. SELLER REPRESENTATIONS:** Subject to any written disclosures made by Seller as a part of this transaction, Seller makes the following representations to Buyer:

(a) The primary dwelling is connected to: (*select all that apply*)
(i) ☐ a public sewer system,
(ii) ☐ an on-site sewage system,

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 7 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

(iii) ☐ a public water system,
(iv) ☐ a private well, and/or
(v) ☐ other (for example, surface springs, cistern, etc.) ____________________________________________.

(b) Seller has no knowledge of any hazardous substances in or about the Property other than substances, if any, contained in appliances and equipment. Buyer acknowledges asbestos commonly exists in insulation, ceilings, floor coverings, and other areas in residential housing and may exist in the Property.

(c) Seller knows of no material defects in or about the Property.

(d) Seller has no notice of any liens or assessments to be levied against the Property.

(e) Seller has no notice from any governmental agency of any violation of law relating to the Property.

(f) Seller knows of no material discrepancies between visible lines of possession and use (such as existing fences, hedges, landscaping, structures, driveways, and other such improvements) currently existing on the Property and the legal description of the Property.

(g) The Property is fully insured by Seller.

Seller will promptly Notify Buyer if, before Closing, Seller receives actual notice of any event or condition that could result in making any of the above representations or previously disclosed material information relating to the Property substantially misleading or incorrect.

These representations are made to the best of Seller's knowledge. Seller may have made no investigations. Exceptions to items (a) through (g) are: (*describe*) ____________________________________________. For more exceptions see Addendum ___________.

Buyer acknowledges the above representations are not warranties regarding the condition of the Property and are not a substitute for, nor in lieu of, Buyer thoroughly and completely investigating, using professionals, where appropriate, all material matters related to the condition and value of the Property and its suitability for Buyer's intended use. Buyer's and Seller's Agents will not be responsible for conducting any inspection or investigation of any aspect of the Property. Buyer acknowledges that Seller or any Agent do not warrant the square footage of any structure or land being purchased. If square footage or land size is a material consideration, all structures and land should be measured by Buyer before signing or should be made an express contingency in this Agreement.

**19. SELLER'S MAINTENANCE AND INSURANCE OBLIGATIONS:** Seller will maintain all electrical wiring, heating, cooling, plumbing, irrigation equipment and systems, and the balance of the Property, including the yard, in substantially their present condition until the time Buyer is entitled to possession. Seller will keep the Property fully insured through Closing.

**20. AS-IS:** Buyer is purchasing the Property in its present condition and with all defects, apparent or not apparent ("AS-IS"), except for Seller's agreements and representations in this Agreement or in the SPDS, if any. This provision will not be construed to limit Buyer's right to implied new home warranties, if any, that may otherwise exist under Oregon law.

**21. APPROVED USES:** THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

**22. SMART HOME FEATURES:** Seller will identify all Smart Home Features in writing within _____ Business Days (three [3] if not filled in) after the Effective Date. In addition, Seller will provide all necessary information for Buyer to access the Smart Home Features at Closing.

SAMPLE

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________



No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

**23. HOMEOWNERS ASSOCIATION/TOWNHOME/PLANNED COMMUNITY:** Is the Property a Townhome, in a Planned Community, or is it in an area subject to a Homeowner's Association? (*select one*) .......... ☐ Yes ☐ No ☐ Unknown
If Yes, Buyer has attached OREF 024 – Owners Association Addendum to this Agreement. In this Agreement, "Townhome" means a connected home where the owner also owns the ground beneath the home, and "Planned Community" means a residential subdivision, not a condominium or timeshare, in which owners are collectively responsible for part of the subdivision.

**24. ALARM SYSTEM:** (*select one*) .......... ☐ None ☐ Owned ☐ Leased ☐ Unknown
If Leased, Buyer (*select one*) ☐ will ☐ will not assume the lease at Closing.

**25. SMOKE/CARBON MONOXIDE DETECTORS:** Within _____ Business Days (ten [10] if not filled in) after the Effective Date, all smoke alarms, smoke detectors, and carbon monoxide detectors required by law will be installed in the Property and will be in working order. Refer to ORS 479.260 for smoke alarms and smoke detectors and ORS 476.725 for carbon monoxide alarms, or see http://www.oregon.gov/osfm.

**26. WOOD STOVE OR WOOD BURNING FIREPLACE INSERT:** Does the Property contain a solid fuel burning device, such as a wood stove or wood burning fireplace insert? (*select one*) .......... ☐ Yes ☐ No
If Yes, Seller will promptly provide Buyer with OREF 046 – Wood Stove and Wood Burning Fireplace Insert Addendum.

**27. SOLAR PANEL SYSTEM:** Does the Property contain solar panels? (*select one*).......... ☐ Yes ☐ No
If Yes, Buyer has attached OREF 105 – Solar Panel System Addendum to this Agreement.

**28. HOME WARRANTIES:** Home warranty plans may be available to help cover homeowner costs to repair/replace certain home systems and appliances. (See specific plan for details.) Will a plan be purchased for Buyer as a part of this transaction? (*select one*).......... ☐ Yes ☐ No
If Yes, identify plan and cost: ________________________________________ $______________
The warranty will be ordered and paid for by (*select one*) ☐ Buyer ☐ Seller.

**29. ADDITIONAL PROVISIONS:** (*describe*) ____________________________________________
____________________________________________
____________________________________________
____________________________________________. For more provisions, see Addendum ___________.

## ESCROW AND CLOSING

**30. ESCROW:** This transaction will be Closed at (*identify*) ________________________________ ("Escrow"), a neutral escrow company licensed and located in the State of Oregon. Costs of Escrow will be shared equally between Buyer and Seller unless specifically prohibited by the U.S. Department of Veterans Affairs (Federal VA). Any transfer tax will be shared equally between Buyer and Seller. Seller authorizes Seller's Agent to order an owner's title policy at Seller's expense and further authorizes Escrow to pay out of the cash proceeds of sale the expense of furnishing such policy, Seller's recording fees, Seller's closing costs, and any liens and encumbrances on the Property payable by Seller on or before Closing. Buyer will deposit with Escrow sufficient funds necessary to pay Buyer's recording fees, Buyer's closing costs, and Lender's fees, if any. Real estate fees or compensation for professional real estate services provided by Buyer's or Seller's Agents' Firms will be paid at Closing in accordance with the listing agreement, buyer representation agreement, or other written agreement for compensation.

If Buyer is an entity or trust, Buyer and Seller will, at least ten (10) Business Days before the Closing Deadline, provide all information required by Escrow to comply with U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") reporting. Buyer will pay Escrow's charges for the reporting.

**31. EARNEST MONEY DEPOSIT(S):** Once the Deposits are placed with Escrow, Seller's and Buyer's Agents and Firms will have no further responsibility to Buyer or Seller regarding the Deposits.

**31.1. Deposit.** The Deposit will be payable and deposited within _____ Business Days (three [3] if not filled in) after the Effective Date (the "Deposit Deadline") as follows: (*select one*)

(a) ☐ directly with Escrow;

(b) ☐ directly into Buyer's Agent's Firm's client trust account and remain there until disbursement at Closing;

(c) ☐ directly into Buyer's Agent's Firm's client trust account, followed by deposit with Escrow/Title Company before Closing; or

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 9 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

(d) ☐ as follows: (*describe*) ________________________________________________.

**31.2. Additional Deposit.** If an Additional Deposit is to be paid, it will be deposited by ☐ (*insert date*) ____________________ or ☐ other (*describe*) ________________________________________________ (the "Additional Deposit Deadline") as follows: (*select one*)

(a) ☐ directly with Escrow;

(b) ☐ directly into Buyer's Agent's Firm's client trust account and remain there until disbursement at Closing;

(c) ☐ directly into Buyer's Agent's Firm's client trust account, followed by deposit with Escrow/Title Company before Closing; or

(d) ☐ as follows: (*describe*) ________________________________________________.

**31.3. Breach of Earnest Money.** Buyer's failure to place the Deposit and/or Additional Deposit, as described above, by no later than 5:00 p.m. on the last day of the Deposit Deadline and/or Additional Deposit Deadline, will be considered a breach of Section 32.2 (Earnest Money Payment to Seller).

Buyer's withdrawal or attempted withdrawal of one or both Deposits, except as authorized by Seller or in accordance with this Agreement, will be considered a breach of this Agreement, will result in a forfeiture of the Deposit, and, at the option of the Seller, termination of this Agreement.

**32. EARNEST MONEY DEPOSIT INSTRUCTIONS TO ESCROW:** Buyer and Seller instruct Escrow as follows: upon your receipt of a copy of this Agreement signed by Buyer and Seller, establish an escrow account and proceed with Closing in accordance with the terms of this Agreement. If you determine the transaction cannot be Closed for any reason (whether or not there is a dispute between Buyer and Seller) you are to hold all Deposits until you receive written instructions from Buyer and Seller, or a final ruling from a court or arbitrator, as to the disposition of the Deposits.

**32.1. Earnest Money Refund to Buyer.** All Deposits will be promptly refunded to Buyer if: (a) Seller signs and accepts this Agreement but fails to furnish marketable title; or (b) Seller fails to complete this transaction in compliance with the material terms of this Agreement; or (c) any condition which Buyer has made an express contingency in this Agreement, and has not been otherwise waived, fails through no fault of Buyer. However, Buyer's acceptance of the refund will not constitute a waiver of other legal remedies available to Buyer.

**32.2. Earnest Money Payment to Seller.** If Seller signs and accepts this Agreement and title is marketable, Seller, at Seller's option, may terminate this Agreement, and all Deposits paid or agreed to be paid will be paid to Seller as liquidated damages, if: (a) Buyer has materially misrepresented Buyer's financial status; or (b) Buyer's financial institution does not pay, when presented, any check given as a Deposit or fails to timely make a wire transfer of a Deposit; or (c) Buyer fails to complete this transaction in accordance with the material terms of this Agreement. The Parties expressly agree Seller's economic and non-economic damages arising from Buyer's failure to close this transaction in accordance with the terms of this Agreement would be difficult or impossible to ascertain with any certainty, that the Deposits are a fair, reasonable, and appropriate estimate of those damages, and represent a binding liquidated sum, not a penalty.

The Seller's sole remedy for Buyer's failure to close this transaction in accordance with the material terms of this Agreement is limited to the Deposits. Seller's right to recover from Buyer any Deposit will be resolved as described in the Dispute Resolution Sections.

**33. CLOSING:** Closing will occur on a date mutually agreed on between Buyer and Seller on or before (*insert date*) ______________________ (the "Closing Deadline"). Buyer and Seller acknowledge for Closing to occur by the Closing Deadline, it may be necessary to execute documents and deposit funds in Escrow before that date.

If Escrow is to prepare documents required under Section 9 (Seller-Carried Financing), Seller must notify Escrow three (3) Business Days before the Closing Deadline.

Federal law requires Buyer's Lender to ensure that Buyer receives a Closing Disclosure at least three (3) Business Days before the date Buyer signs loan documents. A change to the Closing Disclosure late in the transaction could result in a delay in Closing to comply with the three-business day rule. A delay beyond the Closing Deadline could result in termination of the transaction unless Seller and Buyer mutually agree to extend it.

**34. DEED:** Seller will convey marketable title to the Property by statutory warranty deed (or good and sufficient personal representative's or trustee's or similar legal fiduciary's deed, where applicable) free and clear of all liens of record, except property taxes that are a lien but not yet payable, zoning ordinances, building and use restrictions, reservations in federal patents, easements, covenants, conditions and restrictions, and those matters accepted by Buyer pursuant to Section 11 (Title Insurance). Buyer is advised to secure legal advice regarding different forms of ownership and rights

Buyer Initials _______ / _______ / _______ / _______

Seller Initials _______ / _______ / _______ / _______

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 10 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

SAMPLE

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

# RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

of survivorship. Agents are not qualified to provide advice on these issues. Once the desired form of ownership is determined, Buyer will promptly notify Escrow.

**35. POSSESSION:** Are one or more tenants currently in possession of the Property? (*select one*) .............................................. ☐ Yes ☐ No

If Yes, (*select one*)

(a) ☐ Seller will remove all tenants before Closing, pay any tenant relocation costs required by law, and deliver possession to Buyer by 5:00 p.m. on the date of Closing; or

(b) ☐ Buyer will accept all tenants at Closing, all rents will be prorated as of Closing, and all deposits held on behalf of tenants by Seller will be transferred to Buyer through Escrow at Closing. Buyer and Seller are encouraged to attach OREF 070 – Investment Property Addendum to address additional items related to Buyer accepting tenants at Closing.

If No, possession of the Property will be delivered by Seller to Buyer: (*select one*)

(a) ☐ by 5:00 p.m. on the date of Closing;

(b) ☐ by (*insert time*) ________ ☐ a.m. ☐ p.m. _____ Calendar Days after Closing. Buyer will attach OREF 054 – Agreement to Occupy After Closing to this Agreement; or

(c) ☐ by (*insert time*) ________ ☐ a.m. ☐ p.m. on (*insert date*) ______________________. If Parties agree that Seller will deliver possession to Buyer before or after Closing, Buyer will attach OREF 053 – Agreement to Occupy Before Closing or OREF 054 – Agreement to Occupy After Closing to this Agreement.

**36. PROPERTY CONDITION AT POSSESSION:** Before Buyer possession, Seller will remove all of Seller's personal property, including trash, except for the items described in Section 2.2 (Personal Property). In addition, Seller will (*specify additional property conditions*)
____________________________________________________________
____________________________________________________________
______________________________________. For additional property conditions at possession, see Addendum ______________.

**37. PRORATIONS:** Rents, current year's taxes, interest on assumed obligations, and other prepaid expenses attributable to the Property will be prorated as of (*select one*) ☐ the Closing Date ☐ the date Buyer is entitled to possession.

**38. UTILITIES:** Seller will pay all utility bills accrued to the date Buyer is entitled to possession. Buyer will pay Seller for heating fuel/propane on the Property on the date Buyer is entitled to possession, at Seller's supplier's rate. Payment will be handled between Buyer and Seller outside of Escrow. Seller will not terminate or disconnect electric, gas, heating fuel/propane, or water utilities before the date Buyer is entitled to possession unless the Parties agree otherwise in writing.

## TAXES

**39. INCOME TAX WITHHOLDING:**

**39.1. Oregon Withholding.** Subject to certain exceptions, Escrow is required to withhold a portion of Seller's proceeds if Seller is a non-resident individual or corporation as defined under Oregon law. Buyer and Seller will cooperate with Escrow by executing and delivering any instrument, affidavit, or statement as requested, and to perform any acts reasonable or necessary to carry out the provisions of Oregon law.

**39.2. Federal Withholding (FIRPTA).** If Seller is a "foreign person" under the Foreign Investment in Real Property Tax Act ("FIRPTA"), then even if there is an exemption to FIRPTA applicability, Buyer and Seller will ask Escrow to assist the Parties with FIRPTA compliance, see OREF 092 – Advisory Regarding FIRPTA Tax. Seller's failure to comply with FIRPTA is a material default under this Agreement.

If Seller is not a "foreign person," then Seller will Deliver to Escrow a certificate that complies with 26 CFR §1.1445-2 (the "Certificate") before Closing. If Seller fails to do so, Seller will be presumed to be a "foreign person," and the terms of the previous paragraph will apply. Escrow is instructed to act as a Qualified Substitute and provide Buyer with a statement that complies with 26 U.S.C. § 1445(b)(9) at Closing.

If Escrow does not agree to assist with FIRPTA compliance, including providing the form Certificate or acting as a Qualified Substitute, then either Buyer or Seller may move Escrow to another Oregon-licensed escrow agent who is willing to assist with FIRPTA compliance, in which case the

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE



No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

SALE AGREEMENT # ________________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

Parties will equally share any cancellation fees. If, due to moving escrow, this transaction cannot be Closed by the Closing Date, the Closing Date will be extended by five (5) Business Days to accommodate the move.

Seller's and Buyer's Agents are not experts in FIRPTA and will not act as a transferor or transferee agent or Qualified Substitute for purposes of the Withholding Requirement. If FIRPTA may apply in this transaction, Seller and Buyer should promptly consult their own experts familiar with FIRPTA related law and regulations. For further information, see www.irs.gov.

**40. 1031 EXCHANGE:** If Buyer or Seller elects to complete an exchange under Section 1031 of the Internal Revenue Code in this transaction, the other Party will cooperate with them and the accommodator, if any, as necessary to complete the exchange, so long as it will not delay the close of escrow or cause additional expense or liability to the cooperating Party. Unless otherwise provided in this Agreement, this provision will not become a contingency to the Closing of this transaction.

**41. LEVY OF ADDITIONAL PROPERTY TAXES:** The Property (*select one*) ☐ is ☐ is not specially assessed for property taxes (for example, farm, forest, or other) in a manner that may result in the levy of additional taxes in the future. If it is specially assessed, Seller represents the Property is current as to income or other conditions required to preserve its deferred tax status. If, as a result of Buyer's actions or the Closing of this transaction, the Property either is disqualified from special use assessment or loses its deferred tax status, then unless otherwise specifically indicated in this Agreement, Buyer will be responsible for and will pay when due, any deferred and/or additional taxes and interest that may be levied against the Property, and will defend Seller against any liabilities or claims arising out of those taxes or assessments.

However, if as a result of Seller's actions before Closing, the Property either is disqualified from its entitlement to special use assessment or loses its deferred tax status, and if Seller did not disclose the upcoming disqualification or loss of status to Buyer in writing prior to Closing, Buyer may, at Buyer's sole option, promptly either: (a) terminate this transaction and receive a refund of all Deposits paid by Buyer in anticipation of Closing; or (b) close this transaction, in which event Seller will pay into escrow all deferred and/or additional taxes and interest levied or recaptured against the Property and will defend Buyer against any liabilities or claims arising out of those taxes or assessments. Nothing in this paragraph will be construed to limit Buyer's or Seller's available remedies or damages arising from a breach of this section.

**42. HISTORIC PROPERTY DESIGNATION:** If the Property is or may be subject to a historic property local ordinance or is subject to or may qualify for the Historic Property Special Property Tax Assessment under ORS 358.475 to 358.565, Seller will promptly provide OREF 045A – Historic Property Addendum.

### DISPUTE RESOLUTION

**43. FILING OF CLAIMS:** All claims, controversies, and disputes between Seller, Buyer, Agents, and/or Firms, relating to the enforcement or interpretation of this Agreement (including those for rescission) as well as those relating to the validity or scope of the Sale Agreement, and all matters concerning the jurisdiction of the arbitrator(s) and/or Arbitration Service of Portland ("ASP"), to hear and decide questions of arbitrability (collectively, "Claims"), will be exclusively resolved in accordance with the procedures in this section, which will survive Closing or earlier termination of this transaction. All Claims will be governed exclusively by Oregon law, and venue will be placed in the county where the Property is situated. Filing a Claim for arbitration will be treated the same as filing in court for purposes of meeting any applicable statute of limitations or statute of ultimate repose, and for purposes of filing a *lis pendens*. By consenting to the provisions in this section, Buyer and Seller acknowledge they are giving up the constitutional right to have Claims tried by a judge or jury in state or federal court, including all issues relating to the arbitrability of Claims.

**44. EXCLUSIONS:** The following will not constitute Claims:

(a) any proceeding to enforce or interpret a mortgage, trust deed, land sale contract, or recorded construction lien;

(b) a forcible entry and detainer action, also known as an eviction;

(c) if the matter is exclusively between REALTORS® and is otherwise required to be resolved under the Code of Ethics & Professional Standards Policies of the National Association of REALTORS®;

(d) if the matter relates to real estate compensation or fee with an Agent or Firm, and the written listing, service, or fee agreement with Buyer or Seller contains a mandatory mediation and/or arbitration provision; and

(e) filing in court for the issuance of provisional process described under the Oregon Rules of Civil Procedure; however, such filing will not constitute a waiver of the duty to utilize the dispute resolution procedures described in this Agreement.

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 12 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

**45. SMALL CLAIMS BETWEEN BUYER AND SELLER:** If the Circuit Court in the county in which the Property is located has a small claims department, all Claims between Buyer and Seller within the jurisdiction of that small claims department will be brought and decided there, in lieu of mediation, arbitration, or litigation in any other forum. If that Circuit Court does not have a small claims department, those Claims will be brought and decided in the small claims department of the applicable Justice Court. Buyer and Seller waive any rights they may have under ORS 46.455(3) or ORS 55.065(2)(c) to remove the matter from a small claims department by requesting a jury trial. A judgment in a small claims department is final and binding for all purposes, and despite the provisions of ORS 51, there is no right to appeal a small claims department judgment.

**46. MEDIATION AND ARBITRATION BETWEEN BUYER AND SELLER:** All Claims will first be submitted to mediation through the program administered by ASP. All Claims that have not been resolved by mediation as described in this Agreement will be submitted to final and binding arbitration in accordance with the then-existing rules of ASP. The prevailing Party in any arbitration between Buyer and Seller will be entitled to recovery of all reasonable attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees; but only if it is first established to the satisfaction of the arbitrator(s) (or judge, if applicable) that the prevailing Party offered or agreed in writing to participate in mediation before, or promptly upon, the filing for arbitration.

**47. MEDIATION AND ARBITRATION INVOLVING AGENTS/FIRMS:** All Claims that include Agents or their Firms, including those within the jurisdiction of a small claims department, will be resolved in accordance with the mediation and arbitration process described in Section 46. If applicable, the prevailing party will be entitled to an award of attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees, as described in that section.

### DEFINITIONS/MISCELLANEOUS

**48. DEFINITIONS:** In addition to the other definitions in this Agreement, when the first letter of these terms is capitalized, they mean the following.

(a) **Agent** means Buyer's or Seller's real estate agents licensed to perform professional real estate activity in the State of Oregon.

(b) **Agreement** or **Sale Agreement** means this Residential Real Estate Sale Agreement and any written offer, counteroffer, or addendum in any form or language that adds to, amends or otherwise modifies this Agreement that has been Signed and Delivered.

(c) **Business Day** means Monday through Friday, except days that are recognized as official holidays by Oregon under ORS 187.010 or the United States under 5. U.S.C. § 6103.

(d) **Calendar Day** means any day on the calendar, including weekends and holidays.

(e) **Closing, Closed,** and **Closing Date** mean when the deed or contract is recorded and funds are available to Seller.

(f) **Deliver, Delivery,** and **Delivered** means transmission of a document, either by placing it in a U.S. mailbox, taking it to the recipient's address, or placing it in the custody of a delivery service ("Manual Delivery"), or by pushing send or start on a device that sends facsimiles or in an electronic mail program ("Electronic Delivery").

(g) **Deposits** means the Deposit and any Additional Deposit described in Section 1 (Parties/Property Description/Price) of this Agreement.

(h) **Effective Date** means the date Seller and Buyer have (i) signed and accepted the Sale Agreement, and (ii) Delivered it to the other Party.

(i) **Firm** means the real estate company with which an Agent is affiliated.

(j) **Notice** means a written statement Delivered to the other Party.

(k) **Notify** or **Notifies** means delivering a Notice to the other Party or their Agent.

(l) **Parties** means Buyer and Seller, and **"Party"** means Buyer or Seller.

(m) **Signed and Delivered** means Seller and Buyer have (i) signed a document and (ii) Delivered it to the other Party or their Agent. When a document is Signed and Delivered, it becomes legally binding on Buyer and Seller, and neither has the ability to withdraw it.

(n) **Smart Home Features** means appliances, lighting, or electronic devices that can be controlled remotely by the owner, often via a mobile app. Smart Home Features may also operate in conjunction with other devices in the home and communicate information to other smart devices.

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE** **OREF 001 | Released 01/2026 | Page 13 of 15**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

SAMPLE

SAMPLE

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

**49. MISCELLANEOUS:** The following provisions govern the manner in which the terms of this Agreement will be construed.

(a) **Binding Effect.** This Agreement is binding on the heirs, successors, and assigns of Buyer and Seller. However, Buyer's rights and responsibilities under this Agreement or in the Property are not assignable without the prior written consent of Seller.

(b) **Counterparts.** This Agreement may be signed in multiple legible counterparts with the same legal effect as if all Parties signed the same document.

(c) **Electronic Transmission.** The sending of a signed acceptance of this Agreement via Electronic Delivery from one Party (or their Agent) to the other Party (or their Agent) will have the same effect as Manual Delivery of the signed original. If the Parties intend to use any other method for transmitting a signed offer or acceptance of the Agreement (such as regular mail, certified mail, or overnight Delivery), they should so specify at Section 29 (Additional Provisions) of this Agreement.

(d) **Nonparties.** Agent(s) and Firm(s) identified in the "Final Agency Acknowledgment" section are not parties to this Agreement but are subject to Section 47 (Mediation and Arbitration Involving Agents/Firms).

(e) **Notices.** All written Notices or documents required or permitted under this Agreement to be Delivered to Buyer or Seller may be Delivered to their respective Agent with the same effect as if Delivered to that Buyer or Seller. When escrow for this transaction is opened, Buyer, Seller, and their respective Agents, where applicable, will provide escrow with their preferred means of receiving Notice (for example, email or text address, facsimile number, mailing or personal delivery address, or other), which will serve as the primary location for receipt of all notices or documents (the "Notification Method"). Notice will be deemed Delivered as of the earliest of:

(i) the date and time the Notice is sent by email or fax;
(ii) the time the Notice is personally Delivered to either the Agent or the Agent's Office; or
(iii) three (3) Calendar Days after the date the Notice is posted in the U.S. Mail.

(f) **Time.**

(i) Time is of the essence of this Agreement.
(ii) Any reference in this Agreement to a specific time refers to the time in the time zone where the Property is located.
(iii) Time calculated
  (1) in Calendar Days after the Effective Date will start on the first full Calendar Day after the Effective Date;
  (2) in Business Days after the Effective Date will start on the first full Business Day after the Effective Date;
  (3) in Calendar Days after a triggering event, such as Delivery of a document, will start on the first full Calendar Day after the triggering event;
  (4) in Business Days after a triggering event will start on the first full Business Day after the triggering event.
(iv) If a date is calculated based on the date Buyer is entitled to possession, and if Buyer will not be entitled to possession of the Property because one or more tenants is in possession, the date Buyer is entitled to possession will, for that purpose, be deemed to be the Closing Date.
(v) Unless a different time is specified in the Agreement, all deadlines for performance, measured in business or calendar days, will terminate as of 5:00 p.m. on the last day of the deadline.

THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.

Buyer Initials ________ / ________ / ________ / ________

Seller Initials ________ / ________ / ________ / ________



No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

OREF
OREGON REAL ESTATE FORMS

EQUAL HOUSING OPPORTUNITY

SALE AGREEMENT # ________________

RESIDENTIAL

# RESIDENTIAL REAL ESTATE SALE AGREEMENT

SAMPLE

## SIGNATURE INSTRUCTIONS

**50. OFFER TO PURCHASE:** Buyer offers to purchase the Property on the terms and conditions in this Agreement. Buyer acknowledges receipt of a completely filled-in copy of this Agreement, which Buyer has fully read and understands. Buyer acknowledges that Buyer has not relied on any oral or written statement made by Seller, Seller's Agent, or Buyer's Agent that is not expressly contained in this Agreement. Because of the importance of consistent terminology and compatible documents, Buyer has chosen to use this Agreement and the other forms provided by Oregon Real Estate Forms, LLC ("OREF") for this transaction.

This offer will automatically expire on (*insert date and time*) ____________________ at ________ ☐ a.m. ☐ p.m. (the "Offer Deadline"). This offer may be accepted by Seller only in writing. Buyer may withdraw this offer before the Offer Deadline at any time before Seller's transmission of signed acceptance.

Buyer ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________

Buyer ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________

Buyer ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________

Buyer ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________

This offer was Delivered by Seller's Agent to Seller for signature on (*insert date and time*) ____________________ at _______ ☐ a.m. ☐ p.m.

**51. SELLER'S RESPONSE:** (*select one – if no selection is made, this Agreement is void and of no effect*)

If Seller signs and Delivers this Agreement or Counteroffer to Buyer after the Offer Deadline, this Agreement will not be binding on Seller and Buyer unless they also sign and Deliver an addendum, counteroffer, or other writing in which they expressly agree to extend the Offer Deadline. The Parties' failure to do so will be treated as a rejection under Section 51.3, and this Agreement is void and of no effect.

**51.1.** ☐ **Agreement to Sell and Acknowledgments.** Seller accepts Buyer's offer. Seller acknowledges receipt of a completely filled-in copy of this Agreement, which Seller has fully read and understands. Seller acknowledges that Seller has not relied on any oral or written statement made by Buyer, Buyer's Agent, or Seller's Agent that is not expressly contained in this Agreement. Seller has reviewed the Seller Representations made in Section 18 (Seller Representations) and elsewhere in this Agreement and will promptly correct, in writing, any inaccurate representations. Because of the importance of consistent terminology and compatible documents, Seller has chosen to use this Agreement and the other forms provided by OREF for this transaction.

**51.2.** ☐ **Counteroffer.** Seller does not accept the above offer, and Seller has attached to this agreement OREF 003 – Seller's Counteroffer.

**51.3.** ☐ **Rejection.** Seller rejects Buyer's offer.

Seller ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________

Seller ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________

Seller ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________

Seller ____________________________________ Date/Time ____________________ 🡐
Print ____________________________________


No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at: https://orefonline.com/oref-forms-license-terms-and-conditions.

10. Each page of Copyrighted Text 2 includes the “OREF” logo. (“Logo”).

11. Each page of Copyrighted Text 2 includes the following text: “No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022.” (“Copyright Notice”).

12. On June 27, 2024, OREF registered Copyrighted Text 1 with the United States Copyright Office (Registration No.: TX 9-409-794).

13. On January 7, 2025, OREF registered Copyrighted Text 2 with the United States Copyright Office (Registration No.: TX 9-463-002).

14. For all times relevant to this action, Plaintiff has been the author and exclusive copyright holder of all copyright rights in and to OREF’s Copyrighted Texts. As such, Plaintiff is entitled to institute and maintain this action for copyright infringement. See 17 U.S.C. § 501(b).

## II. Defendant's Unlawful Activities

15. On or about August 12, 2025, Defendant copied Copyrighted Text 1 and used as a purported legal document for use as a "Septic / Onsite Sewage System Addendum" for the purchase contract for the real property, 6010 Fern Hill Road, Monmouth, Oregon 97361:

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

SEPTIC / ONSITE SEWAGE SYSTEM ADDENDUM

Buyer(s): Brian D. Tormey & Diana Blair

Seller(s): Kelli L. Whisenhunt as Trustee of the Whisenhunt Joint Revocable Living Trust

Property Address: 6010 Fern Hill Road, Monmouth, OR (the "Property")

1. DEFINITION OF ONSITE SEWAGE SYSTEM:

Generally, onsite sewage (or wastewater) systems collect and treat wastewater and sewage from residences that are not connected to public or community systems. They may include gravity flow systems, sand filter systems, alternative technology treatment systems, seepage pits, cesspools, and other disposal systems. In this Septic/Onsite Sewage System Addendum (this "Sewage System Addendum"), those systems are referred to as an "Onsite Sewage System." The Onsite Sewage System on the Property is referred to as the "System."

2. SELLER REPRESENTATIONS REGARDING THE SYSTEM:

Seller represents, to the best of Seller's knowledge, that the System serving the Property: (a) is operating properly, and (b) complies with all applicable local, state, and federal laws that were applicable to the System at the time it was installed. These representations are in addition to any others made by Seller in the Sale Agreement, other addenda, and Seller's Property Disclosure Statement.

1. 4. ONSITE SEWAGE SYSTEM INFORMATION PROVIDED BY SELLER:

Within five (5) Business Days (three [3] if not filled in) after the Effective Date, Seller will provide Buyer with all available documentation regarding the System (the "Documents and Information"), including but not limited to the following:

(a) all System inspections/testing done within the last six (6) months;

(b) any proposed new public or community sewage systems or associated assessments;

(c) existing maintenance contracts for the System, which may be a DEQ requirement for sand filter and alternative technology systems; and

(d) any other material information regarding the System.

2. 5. SYSTEM INSPECTION SERVICES:

The following services will be ordered within ten (10) Business Days (three [3] if not filled in) after the Effective Date by the party paying for the service: (select all that apply)

(a) X Pumping/Cleaning (specify) ______________________________

(select one) [X] Seller ☐ Buyer will pay for service.

(b) ☐ Location/Accessing: If a septic company requires location or digging services at an additional expense in order to pump/clean/inspect,

Page 15 of 18 6010 Fern Hill Road - Purchase Contract

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

(select one) ☐ Seller ☐ Buyer will pay for service.

(c) [X] Inspections/Test (specify tank, scope, distribution box, leach lines, full DEQ inspection, etc.) ____________________

(select one) ☐ Seller [X] Buyer will pay for service.

(d) ☐ Other (specify) ____________________________________________

(select one) ☐ Seller ☐ Buyer will pay for service.

(e) ☐ None. Buyer should seek competent professional advice before checking this option. Buyer's right to terminate this transaction based upon any test report showing a substantial deficiency in the System are described in Section 6 (Buyer's Right to Terminate Transaction). Buyer should review them carefully.

The party responsible for payment for a service that causes material damage will restore the Property following the completion of that identified service.

**Signatures**

Buyer: ______________________________
Brian D. Tormey
Date 8/10/25

Buyer: ______________________________
Diana Blair
Date 8/10/25

Seller: ______________________________
By: Kelli L. Whisenhunt, as Trustee for the Whisenhunt Joint Revocable Living Trust
Date ____________

This offer was Delivered to Seller for signature on (*insert date and time*) 8/10/25 at 6:00 ☐ a.m. [X] p.m.

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

ADDENDUM TO 6010 FERN HILL ROAD PURCHASE CONTRACT

**Property:** 6010 Fern Hill Road, Monmouth, OR 97361
**Seller:** Kellie Wisenhunt
**Buyers:** Brian D. Tormey and Diana Blair
**Date:** August 10th, 2025

This Rider is incorporated into and made part of the Residential Real Estate Sale Agreement between the above parties and is intended to supplement the terms therein.

**1. Access to Property During Escrow**
Buyer and their representatives shall have reasonable access to the property during the escrow period for the purposes of inspections, surveys, soil and water testing, septic evaluation, appraisal, contractor consultations, and utility planning. Seller agrees to reasonably cooperate in facilitating such access with prior notice.

**2. Inclusion of Farm Equipment and Operational Tools**
All fixed or mobile farm-related equipment, tools, implements, or materials used in the regular maintenance or operation of the property—including but not limited to fencing supplies, livestock panels, utility trailers, irrigation components, and storage containers—shall be included in the sale unless explicitly excluded in writing by Seller prior to closing.

**3. Septic and Drain Field Performance**
Seller warrants that the septic system, including the tank, drain field, and all components, is functioning properly at the time of closing. Buyer may, at their expense, order a full septic inspection. If repairs exceeding $500 are required, Seller agrees to either remedy them prior to closing or provide a credit equal to the cost of repair.

**4. Well and Water Rights Disclosure (if applicable)**
If a private well is discovered to serve any part of the property, Seller shall promptly disclose its location, depth, flow rate, and any prior well test results. Seller agrees to assist Buyer in verifying water rights, if applicable.

**5. Removal of Debris**
Seller agrees to remove all personal property not included in the sale and to deliver the premises broom-clean, free of trash, debris, and hazardous materials prior to possession transfer.

**6. No Leasing or Encumbrances**
Seller affirms that no portion of the property is under lease, license, or other occupancy agreement, and that no encumbrances (e.g., easements, licenses, rights-of-way) affecting use or development exist other than those of record and disclosed via title.

**8. No Real Estate Agent Involvement**
Both Buyer and Seller acknowledge that neither has a real estate agent, Realtor, or broker representing them in this transaction. As such, no commission shall be due from either party to any real estate agent, broker, or brokerage.

**9. Solar Feasibility Quoting and Access**
Buyer shall have the right, at Buyer's sole expense, to obtain quotes or proposals for solar system installation on the roof of the residence or outbuildings during the escrow period. Seller agrees to provide access and cooperate with any site visits by solar consultants for this purpose. No physical alterations, installations, or modifications shall occur prior to closing. This clause grants access and evaluation rights only.

**10. Assignment to Buyer-Controlled Entity**
Buyer shall have the right to assign this Agreement, in whole or in part, to a limited liability company (LLC), Corporation, Trust, or other legal entity that is to some degree directly or indirectly owned or controlled by one or more of the Buyer(s), provided that such assignment does not relieve the original Buyer(s) of any obligations under this Agreement prior to closing. Seller agrees to cooperate with such an assignment and execute any documents reasonably necessary to effectuate it, provided no additional cost or liability is imposed on the Seller as a result.

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

**11. Addendum Controls**
In the event of a conflict between this Rider and the pre-printed contract form, this Rider shall control.

**Signatures**

Buyer: ______________________________
Brian D. Tormey
Date 8/10/25

Buyer: ______________________________
Diana Blair
Date 8/10/25

Seller: ______________________________
By: Kelli L. Whisenhunt, as Trustee for the Whisenhunt Joint Revocable Living Trust
Date ____________

Page 18 of 18 6010 Fern Hill Road - Purchase Contract

16. Defendant removed Logo from each page of Copyrighted Text 1.

17. Defendant removed Copyright Notice from each page of Copyrighted Text 1.

18. On or about August 12, 2025, Defendant copied Copyrighted Text 2 and used as a purported legal document for use as a "Residential Real Estate Sale Agreement" for the purchase contract for the real property, 6010 Fern Hill Road, Monmouth, Oregon 97361:

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

**RESIDENTIAL REAL ESTATE SALE AGREEMENT**

SALE AGREEMENT GENERAL TERMS
This Agreement is intended to be a legal and binding contract. If it is not understood, seek competent legal advice before signing. For an explanation of the capitalized terms and the legal concepts applicable to this Agreement, review Section 48 (Definitions) and Section 49 (Miscellaneous). No changes or alterations are permitted to any portion of the pre-printed format or text of this form. Any such proposed changes or alterations must be made on a separate document.

1. PARTIES/PROPERTY DESCRIPTION/PRICE: Buyer (*insert name[s]*) _Brian D. Tormey & Diana Blair_________ offers to purchase from Seller (*insert name[s]*) _ Kelli L. Whisenhunt as Trustee of the Whisenhunt Joint Revocable Living Trust_ the following described real property (the "Property") situated in the State of Oregon, County of Polk, and commonly known or identified as: (*complete one or more*)
(a) Street Address: __6010 Fern Hill Road, Monmouth, OR 97361 – Inclusive of all 5+ acres____________; and
(If the above address does not adequately describe the Property, include the Tax Identification Number and/or other identifying information.)
(b) Tax Identification Number(s): _ 08530-00-00713 AND __08530-00-00712__________; and
(c) Other Identifying Information (*lot/block number, etc.*): ________________________________________
_______________________________________________________________________________.

If a complete legal description of the Property is not included in this Agreement, Buyer and Seller will use the legal description provided by Escrow, defined in Section 30 (Escrow), for purposes of legal identification and conveyance of title.

Buyer offers to purchase the Property for the "Purchase Price" (in U.S. currency) of eight hundred fifty thousand dollars A $850,000.00 on the following terms:
as earnest money, the sum of (the "Deposit") .................................................. B $42,500.00_____
in accordance with Section 31.2 (Additional Deposit), the sum of (the "Additional Deposit")....C $0.00__________
at or before Closing, the balance of the down payment ........................................ D $0.00__________
at Closing and on Delivery of the [X] deed □ contract, the balance of the Purchase Price ............... E $807,500.00____
will be paid as agreed to in the Financing Sections in this Agreement.
(the sum of Lines B, C, D, and E should equal Line A)

2. ATTACHED ITEMS AND PERSONAL PROPERTY: Items identified as included or excluded in the Multiple Listing Service or marketing materials will not be included in or excluded from the sale unless agreed to in writing.
2.1. Attached Items. Listed below are examples of attached items.
(a) Fixtures. A fixture is any personal property that is attached to real property. Fixtures include built-in appliances, floor coverings, blinds, curtain rods, lighting and bulbs, awnings, window and door screens, and storm doors and windows.
(b) System components. A system component is essential related equipment. System components include irrigation, plumbing, water heaters, ventilation, cooling and heating, Smart Home Features, and all fixtures and their related items, including remote controls, operating manuals, passwords, and all keys related to the property including mailbox and outbuilding(s).
(c) Other attached items. Other attached items include fences, gates, and planted landscaping items.
All attached items are included except: (*describe*) _None__. For additional excluded items, see Addendum ________.

All mounting brackets (*select one*) [X] will □ will not remain with the Property except for (describe) _______________.

All bathroom mirrors (*select one*) [X] will □ will not remain with the Property except for (describe) ___________.

2.2. Personal Property. Personal property refers to objects not permanently attached to the Property. This includes but is not limited to free-standing furniture (which may be secured for safety reasons by anti-tip devices), free-standing appliances (like slide-in refrigerators and ranges), and hanging items (such as artwork, decorative items, and other portable items). Only the following personal property, which is offered "AS-IS" and without any stated value, is included in the sale: (*describe*) _All appliances, equipment, and other property related to the operation of the house or farm is included unless specifically listed as an exclusion in the Contract Rider attached hereto_. For additional personal property, see Addendum _N/A________.

Page 1 of 18 6010 Fern Hill Road - Purchase Contract

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

FINANCING

3. BUYER REPRESENTATION OF FUNDS: In this section: (a) "Funds" means the funds required for Closing of the Property, whether they are the Deposits, down payment, or (if this is an all-cash transaction) the full Purchase Price, but "Funds" does not include the financing described in Sections 6 (Financed) or 7 (Seller-Carried Financing) of this Agreement; and (b) "Liquid" means Funds that are cash or immediately convertible to cash that are available to Buyer. Buyer represents that, upon signing this Agreement: (*select only one*)

(i) □ All Funds are Liquid;

(ii) □ Not all Funds are Liquid; however, all Funds will be Liquid before Closing. This transaction is not contingent upon Buyer obtaining the following non-contingent Funds before Closing (for example 401K Disbursements): (*identify source of non-liquid Funds*) ______________________; or

(iii) [X] This transaction is contingent upon Buyer obtaining Liquid Funds in accordance with the following contingency: (*describe*) _conventional lender financing of up to 80% of the purchase price and closing costs ______________________. For additional contingency details, see Addendum ____________.

4. SELLER CONTRIBUTIONS: Seller will pay the following amount(s) at Closing: (*select all that apply*)

(a) □ Buyer's Agent's Compensation. Compensation to Buyer's Agent's Firm in the amount of (*select and complete one*) □ $________ or □ ____% of the Purchase Price. Except as expressly provided in this Agreement or other written agreements, payment of compensation does not modify any obligation to pay compensation to a real estate agent, or modify or create any agency relationships between any parties. Buyer's Agent's Firm is intended to be a third-party beneficiary of this section.

(b) [X] Closing Costs. (*select and complete one*) □ $________ or [X] 100% of the Purchase Price for Buyer's appraisal and inspection fees, recording fees, loan origination fees, mortgage interest, interest rate buydown, and discount points, typical title and escrow costs, HOA fees, and assessments, homeowner and mortgage insurance, down payment assistance programs, Buyer's portion of property taxes, transfer taxes and other closing costs, and prepaid expenses.

(c) [X] Other. (*describe*) _septic emptying ______________________.

After the Effective Date the parties will document any changes to the terms of this section using OREF 048 – Seller Contributions Addendum.

Buyer and Seller are advised to review OREF 047 – Advisory Regarding Real Estate Compensation for information about how real estate compensation works and the choices available when hiring a real estate agent.

*If the transaction is an all-cash transaction, select and complete section 5. If the transaction is financed, select and complete sections 6 – 6.3. If this is a Seller-Carried Transaction, select and complete section 7.*

5. ALL-CASH: This is an all-cash transaction. Buyer will provide verification ("Verification") of readily available funds as follows: (*select one*)

(a) □ Buyer has attached the Verification to this Agreement;

(b) □ Buyer will provide Seller with the Verification within ___ Business Days (three [3] if not filled in) after the Effective Date; or

(c) □ Other: (*describe*) ______________________

If the Verification is not attached to this Agreement, Seller may Notify Buyer, in writing, of Seller's unconditional disapproval of the Verification within ___ Business Days (two [2] if not filled in) ("Disapproval Period") following its receipt by Seller. Provided, however, such disapproval must be objectively reasonable. Upon such disapproval, all Deposits will be promptly refunded to Buyer and this transaction will be terminated.

If Seller fails to provide Buyer with written unconditional disapproval of the Verification by 5:00 p.m. on the last day of the Disapproval Period, Seller will be deemed to have approved the Verification. If Buyer fails to submit a Verification within a time frame selected above, unless the Parties agree otherwise in writing, all Deposits will be promptly refunded, and this transaction will be terminated.

6. [X] FINANCED: The balance of the Purchase Price will be financed through one of the following loan programs: (*select only one*)

(a) XConventional;

(b) □ FHA;

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

(c) □ Federal VA. Seller (*select one*) □ will □ will not agree to pay Buyer's non-allowable VA fees. If FHA or Federal VA is selected, Buyer has attached OREF 097 – VA/FHA Amendatory Clause and Real Estate Certification to this Agreement;
(d) □ Other: (describe) ____________________
Buyer will seek financing through a lending institution or mortgage broker (collectively, "Lender") participating in the loan program selected above.

Pre-Approval Letter. (*select one*)
(i) □ Buyer has attached a pre-approval letter from Buyer's Lender (a "Pre-approval Letter") to this Agreement;
(ii) □ Buyer will provide Seller with the Pre-approval Letter within ___ Business Days (three [3] if not filled in) after the Effective Date;
(iii) [X] Other: (describe) _N/A____________________

Seller is aware they are accepting an offer contingent upon financing and appraisal. If Buyer's Lender requires an appraisal reinspection due to Seller's breach of this Agreement, Seller will promptly reimburse Buyer for any appraisal reinspection fee Buyer incurs.

6.1. Financing Contingencies: If Buyer is financing any portion of the Purchase Price (the "Loan"), then this transaction is subject to the following contingencies (the "Financing Contingencies"):
(a) Buyer and the Property will qualify for the Loan from Lender;
(b) Lender's appraisal will not be less than the Purchase Price;
(c) Buyer obtains the Loan from Lender, unless failure to obtain the Loan is due to the fault of Buyer; and
(d) Other: (describe) ____________________

Except as provided in this Agreement, all Financing Contingencies are solely for Buyer's benefit and may be waived by Buyer in writing at any time.

6.2. Failure of Financing Contingencies. If Buyer receives actual notification from Lender that any Financing Contingencies have failed or otherwise cannot occur, Buyer will promptly Notify Seller, and the Parties will have ten (10) Business Days following the date of Buyer's Notice to Seller to either:
(a) terminate this transaction by signing an OREF 057 – Termination Agreement and terminate escrow by signing a similar agreement if required by Escrow; or
(b) reach a written agreement on price and terms that will permit this transaction to continue.

Seller and Buyer are not required under the preceding provision (b) to reach an agreement. If (a) or (b) fail to occur within the time period identified in this section, this transaction will be automatically terminated, and all Deposits will be promptly refunded to Buyer.

~~7. SELLER-CARRIED FINANCING: If the Seller is financing all or a portion of the Purchase Price through a land sale contract, promissory note and trust deed/mortgage, option, or lease-to-own agreement (a "Seller-Carried Transaction"), Buyer and Seller are advised to review the OREF 032 – Advisory Regarding Seller-Carried Transactions. Buyer and Seller will: (*select only one*)~~
~~(a) □ use the OREF 033 – Seller-Carried Transaction Addendum and related forms; or~~
~~(b) □ secure a mortgage loan originator ("MLO") or legal counsel to negotiate and draft the necessary documents.~~

~~Regardless of the option selected above, Seller and Buyer will reach a signed written agreement specifying the terms and conditions of such financing (for example, the down payment, interest rate, amortization, term, payment dates, late fees, and balloon dates) within ___ Business Days (ten [10] if not filled in) after the Effective Date ("Negotiation of Terms Period"). If Buyer and Seller fail to reach an agreement by 5:00 p.m. on the last day of the Negotiation of Terms Period, all Deposits will be refunded to Buyer and this transaction will be automatically terminated. Oregon law requires, unless exempted, that individuals offering or negotiating the terms must be an Oregon-licensed attorney or hold an MLO license. Real estate agents are not qualified to provide these services or give advice in this regard. Legal advice is strongly recommended.~~

8. ADDITIONAL FINANCING PROVISIONS: For buyer's agent compensation or closing costs use Section 4 (Seller Contributions). (*describe*)
___None____________________ For additional financing provisions, see Addendum _________.

Page 3 of 18 6010 Fern Hill Road - Purchase Contract

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

INSURANCE

9. PROPERTY AND CASUALTY INSURANCE: Buyer is encouraged to promptly verify the availability and cost of property and casualty insurance that will be obtained for the Property. Additionally, Buyer's Lender, if any, may require proof of that insurance as a condition of a new loan.

10. FLOOD INSURANCE: If the Property is located in a high-risk flood zone, flood insurance may be required as a condition of a new loan. Buyer is encouraged to promptly verify the need for, availability of, and cost of flood insurance. An Elevation Certificate ("EC") is a document used by the National Flood Insurance Program to determine the difference in elevation between a structure and the elevation to which floodwater is anticipated to rise during certain floods. Although an EC is not required to obtain flood insurance, a favorable EC may help lower the insurance premium. For more information, go to www.fema.gov.

CONTINGENCIES

11. TITLE INSURANCE: Within one (1) Business Day after the Effective Date, Seller will order from Escrow a preliminary title report and copies of or links to all documents of record (the "Report and Documents") for the Property. The Parties instruct Escrow to Deliver the Reports and Documents to Buyer as soon as the Reports and Documents are available. If the Report and Documents are not fully understood, Buyer should contact Escrow for further information or seek competent legal advice. Buyer's and Seller's Agents are not qualified to advise on title issues.

Following Delivery of the Report and Documents, and following Delivery of each supplement to the Reports and Documents that contains material information previously unknown to Buyer, Buyer will have ten (10) Business Days within which to Notify Seller and Escrow, in writing, of any unacceptable matters disclosed in the Report and Documents (the "Objections"). Buyer's failure to timely object in writing will be deemed acceptance of the Report and Documents. However, Buyer's failure to timely object will not relieve Seller of the duty to convey marketable title to the Property as described in Section 34 (Deed). If within ten (10) Business Days following Seller's receipt of the Objections, Seller fails to remove or correct any of the Objections, or fails to give written assurances reasonably satisfactory to Buyer of removal or correction before Closing, all Deposits will be promptly refunded to Buyer and this transaction will be terminated unless Buyer waives this contingency in writing. Within thirty (30) Calendar Days after Closing, Escrow will furnish to Buyer at Seller's sole expense an owner's standard form policy of title insurance insuring that Buyer has marketable title to the Property in the amount of the Purchase Price, free and clear of the Objections, if any, and all other title exceptions agreed to be removed as part of this transaction.

12. PROPERTY INSPECTIONS: Buyer understands it is advisable to have complete inspections of the entire Property performed by qualified licensed professionals relating to such matters as structural condition, soil condition/ compaction/stability, survey, zoning, operating systems, suitability for Buyer's intended purpose, and environmental issues. The following list identifies some, but not all, environmental issues that may affect health: asbestos, carbon monoxide, high-frequency electric and magnetic fields, formaldehyde, lead and other contaminants in drinking water and well water, lead-based paint, mold and mildew, radon, and leaking underground storage tanks. If Buyer has any concerns about these conditions or others, Buyer is encouraged to secure the services of licensed professional inspectors, consultants, and health experts for information and guidance. Real estate agents may provide names and contact information of inspectors, consultants, and experts, however, Buyer should thoroughly vet their qualifications, licensing, and insurance before retaining them. Buyer's and Seller's Agents are not qualified to conduct such inspections and will not be responsible to do so. For further information, Buyer is encouraged to review the website of the Oregon Public Health Division at www.public.health.oregon.gov.
(*select only one*)

(a) [X] Licensed Professional Inspections. At Buyer's expense, Buyer may have the Property inspected by one or more licensed professionals of Buyer's choice. Inspections that include testing or removal of any portion of the Property (for example, radon and mold) may not be performed except for the following: (identify invasive inspections) _radon, mold, termites and other inspections as necessary________________.

Buyer will restore the Property following any inspections or tests performed by Buyer. Buyer will have twenty (20) Business Days after the Effective Date (the "Inspection Period"), in which to complete all inspections and negotiations with Seller regarding any matters disclosed in any inspection report. Buyer will not provide all or any portion of the inspection reports to Seller unless Seller delivers Notice to Buyer requesting reports; but if Seller requests in writing all or a portion of a report during this transaction or within thirty (30) Calendar Days following termination, Buyer will promptly comply.

Seller will not be required to modify any terms of this Agreement. Unless a written agreement has already been reached with Seller regarding Buyer's requested repairs, Buyer may give Notice to Seller, using OREF 064 – Notice of Buyer's Unconditional Disapproval, at any time during the Inspection Period, of Buyer's unconditional disapproval of the Property based on any inspection report, in which case all Deposits will be promptly refunded and this transaction will be terminated. If Buyer fails to provide Seller with written unconditional disapproval of any inspection report(s) by 5:00 p.m. on the final day of the Inspection Period, using OREF 064 – Notice of Buyer's Unconditional Disapproval, Buyer will be deemed to have accepted the condition of the Property. If before the expiration of the Inspection Period, written agreement is reached with Seller regarding Buyer's requested repairs, the Inspection Period will automatically terminate unless the Parties agree otherwise in writing.

(b) □ Alternative Inspection Procedures. Buyer has attached OREF 058 – Professional Inspection Addendum to this Agreement.

(c) □ Buyer's Waiver of Inspection Contingency. Buyer represents to Seller, Agents, and Firms that Buyer is fully satisfied with the condition of the Property and its elements and systems, and knowingly and voluntarily elects to waive the right to have any inspections performed as a contingency to the Closing of the transaction. At Buyer's expense, Buyer may have the Property inspected by one or more licensed professionals of Buyer's choice for informational purposes only. Buyer must specifically identify in this Agreement any desired invasive inspections that may include testing or removal of any portion of the Property (for example, radon and mold). (identify invasive inspections) ______________.

(d) □ Buyer's Waiver of Inspections and Inspection Contingency. Buyer represents to Seller, Agents, and Firms that Buyer is fully satisfied with the condition of the Property and its elements and systems, and knowingly and voluntarily elects to waive the inspection contingency and the right to have any inspections. Buyer's waivers are solely Buyer's decision and at Buyer's own risk.

(e) □ Other Inspection Addendum. (specify) ______________________________

The selection above does not apply to OREF 081 – Septic/Onsite Sewage System or OREF 082 – Private Well Addendum if attached.

13. PRIVATE WELL: Does the Property include a well that supplies ground water for human consumption? (*select one*) □ Yes [X] No
If Yes, Buyer has attached OREF 082 – Private Well Addendum to this Agreement.

14. SEPTIC/ONSITE SEWAGE SYSTEM: Does the Property include a septic/onsite sewage system? (*select one*) [X] Yes □ No
If Yes, Buyer has attached OREF 081 – Septic/Onsite Sewage System Addendum to this Agreement.

15. LEAD-BASED PAINT CONTINGENCY PERIOD: If the Property was constructed before 1978, then on or promptly after the Effective Date (the "Date of Delivery"), Seller will Deliver to Buyer OREF 021 – Lead-Based Paint Disclosure Addendum (the "LBP Disclosure Addendum"), together with the EPA Pamphlet entitled "Protect Your Family From Lead in Your Home" and all information, records, and reports available to Seller pertaining to lead-based paint and/or lead-based paint hazards on the Property. Unless waived by Buyer in writing in the LBP Disclosure Addendum, Buyer will have _ten (10)_ Calendar Days (ten [10] if not filled in) commencing on the day following the Date of Delivery (the "LBP Contingency Period"), within which to conduct a lead-based paint assessment or inspection of the Property. Buyer may terminate this Agreement:

(a) by giving Seller written Notice of termination during the LBP Contingency Period; or

(b) any time before Seller delivers to Buyer or Buyer's Agent both (i) EPA pamphlet "Protect Your Family From Lead in Your Home," and (ii) any information, records, or reports available to Seller regarding lead-based paint and/or lead-based paint hazards on the Property.

However, Buyer has no right to terminate under this provision if Buyer closes this transaction, or if Buyer waives the right to conduct a risk assessment or inspection in the "Buyer's Acknowledgment" section of the LBP Disclosure Addendum. Upon termination, all Deposits will be promptly refunded to Buyer. If requested by Seller, Buyer will Deliver to Seller a copy of Buyer's written reports or evaluations, if any, with Notice of termination. Buyer's failure to Deliver to Seller the Notice of termination during the LBP Contingency Period will constitute acceptance of the condition of the Property as it relates to the presence of lead-based paint and/or lead-based paint hazards, and the LBP Contingency Period will automatically expire.

16. SELLER'S PROPERTY DISCLOSURE STATEMENT: Oregon law requires Seller to sign and Deliver a complete seller's property disclosure statement in the form described in ORS 105.464 (the "SPDS") to Buyer. Buyer has a right to revoke Buyer's offer (the "Revocation Right") unless this transaction is exempt, or Buyer has waived the Revocation Right, or this transaction has closed. Buyer may exercise the Revocation Right only by delivering a signed written statement of revocation to Seller disapproving the SPDS. The revocation statement may be delivered before Seller delivers the SPDS to Buyer, or within five (5) Business Days after Seller delivers the SPDS to Buyer (the "Revocation Period"). If Seller Delivers the SPDS to Buyer before the Effective Date, the Revocation Period will begin on the Effective Date instead of beginning on any other date determined by any law, statute or rule.

CONDITION AND COMPONENTS OF THE PROPERTY

17. HOMEBUYER PROTECTION ACT: Construction liens can be filed by contractors and building material suppliers for new construction, additions, and remodeling projects. Construction liens filed after Closing could expose buyers to liability for costs that sellers should pay before Closing. Oregon's Homebuyer Protection Act requires sellers to protect buyers against these liens. If the Property is a single-family residence, condominium unit, or 2-4 dwelling building, and more than fifty thousand dollars ($50,000) in improvements are completed at the Property during the ninety (90) calendar days before Closing, Seller will, at or before Closing, complete and deliver to Buyer the "Notice of Compliance with the Homebuyer Protection Act" provided by the Oregon Construction Contractors Board.

18. SELLER REPRESENTATIONS: Subject to any written disclosures made by Seller as a part of this transaction, Seller makes the following representations to Buyer:

(a) The primary dwelling is connected to: (*select all that apply*)

(i) □ a public sewer system,

(ii) [X] an on-site sewage system,

(iii) [X] a public water system,

(iv) □ a private well, and/or

(v) □ other (for example, surface springs, cistern, etc.) ______________________________

(b) Seller has no knowledge of any hazardous substances in or about the Property other than substances, if any, contained in appliances and equipment. Buyer acknowledges asbestos commonly exists in insulation, ceilings, floor coverings, and other areas in residential housing and may exist in the Property.

(c) Seller knows of no material defects in or about the Property.

(d) Seller has no notice of any liens or assessments to be levied against the Property.

(e) Seller has no notice from any governmental agency of any violation of law relating to the Property.

(f) Seller knows of no material discrepancies between visible lines of possession and use (such as existing fences, hedges, landscaping, structures, driveways, and other such improvements) currently existing on the Property and the legal description of the Property.

(g) The Property is fully insured by Seller.

Seller will promptly Notify Buyer if, before Closing, Seller receives actual notice of any event or condition that could result in making any of the above representations or previously disclosed material information relating to the Property substantially misleading or incorrect.

These representations are made to the best of Seller's knowledge. Seller may have made no investigations. Exceptions to items (a) through (g) are:
(*describe*) _None_________________________________. For more exceptions see Addendum ______________.

Buyer acknowledges the above representations are not warranties regarding the condition of the Property and are not a substitute for, nor in lieu of, Buyer thoroughly and completely investigating, using professionals, where appropriate, all material matters related to the condition and value of the Property and its suitability for Buyer's intended use. Buyer's and Seller's Agents will not be responsible for conducting any inspection or investigation of any aspect of the Property. Buyer acknowledges that Seller or any Agent do not warrant the square footage of any structure or land being purchased. If square footage or land size is a material consideration, all structures and land should be measured by Buyer before signing, or should be made an express contingency in this Agreement.

19. SELLER'S MAINTENANCE AND INSURANCE OBLIGATIONS: Seller will maintain all electrical wiring, heating, cooling, plumbing, irrigation equipment and systems, and the balance of the Property, including the yard, in

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

substantially their present condition until the time Buyer is entitled to possession. Seller will keep the Property fully insured through Closing.

20. "AS-IS": Except for Seller's agreements and representations in this Agreement or in the SPDS, if any, Buyer is purchasing the Property "AS-IS," in its present condition and with all defects, apparent or not apparent. This provision will not be construed to limit Buyer's right to implied new home warranties, if any, that may otherwise exist under Oregon law.

21. APPROVED USES: THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

22. SMART HOME FEATURES: Seller will identify all Smart Home Features in writing within five (5) Business Days after the Effective Date. In addition, Seller will provide all necessary information for Buyer to access the Smart Home Features at Closing.

23. HOMEOWNERS ASSOCIATION/TOWNHOME/PLANNED COMMUNITY: Is the Property a townhome, in a planned community, or is it in an area subject to a Homeowner's Association? (*select one*) □ Yes [X] No □ Unknown

If Yes, Buyer has attached OREF 024 – Owners Association Addendum to this Agreement. In this Agreement, "townhome" means a connected home where the owner also owns the ground beneath the home, and "planned community" means a residential subdivision, not a condominium or timeshare, in which owners are collectively responsible for part of the subdivision.

24. ALARM SYSTEM: (*select one*) [X] None □ Owned □ Leased □ Unknown
If Leased, Buyer (*select one*) □ will □ will not assume the lease at Closing.

25. SMOKE/CARBON MONOXIDE DETECTORS: Within ten (10) Business Days after the Effective Date, all smoke alarms, smoke detectors, and carbon monoxide detectors required by law will be installed in the Property and will be in working order. Refer to ORS 479.260 for smoke alarms and smoke detectors and ORS 476.725 for carbon monoxide alarms, or see http://www.oregon.gov/osfm.

26. WOOD STOVE OR WOOD BURNING FIREPLACE INSERT: Does the Property contain a solid fuel burning device, such as a wood stove or wood burning fireplace insert? (*select one*) □ Yes [X] No
If Yes, Seller will promptly provide Buyer with OREF 046 – Wood Stove and Wood Burning Fireplace Insert Addendum.

27. SOLAR PANEL SYSTEM: Does the Property contain solar panels? (*select one*) □ Yes [X] No
If Yes, Seller will promptly provide Buyer with OREF 105 – Solar Panel System Addendum.

28. HOME WARRANTIES: Home warranty plans may be available to help cover homeowner costs to repair/replace certain home systems and appliances. (See specific plan for details.) Will a plan be purchased for Buyer as a part of this transaction? (*select one*) □ Yes [X] No
If Yes, identify plan and cost: ______________________________ $__________
The warranty will be ordered and paid for by (*select one*) □ Buyer □ Seller.

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

29. ADDITIONAL PROVISIONS: (*describe*) _See attached Addendum to Purchase Contract ___________. For additional provisions, see Addendum ___________.

ESCROW AND CLOSING

30. ESCROW: This transaction will be Closed at (identify) First American – Direct National Services Division ("Escrow"), a neutral escrow company licensed and located in the State of Oregon. Costs of Escrow will be born by the Seller unless specifically prohibited by the U.S. Department of Veterans Affairs (Federal VA). Any transfer tax will be paid by the Seller. Seller authorizes Seller's Agent to order an owner's title policy at Seller's expense and further authorizes Escrow to pay out of the cash proceeds of sale the expense of furnishing such policy, Seller's recording fees, Seller's closing costs, and any liens and encumbrances on the Property payable by Seller on or before Closing. Buyer will deposit with Escrow sufficient funds necessary to pay Buyer's recording fees, Buyer's closing costs, and Lender's fees if any. Real estate fees or compensation for professional real estate services provided by Buyer's or Seller's Agents' Firms will be paid at Closing in accordance with the listing agreement, buyer representation agreement, or other written agreement for compensation.

31. EARNEST MONEY DEPOSIT(S): Once the Deposits are placed with Escrow, Seller's and Buyer's Agents and Firms will have no further responsibility to Buyer or Seller regarding the Deposits.

31.1. Deposit. The Deposit will be payable and deposited within five (5) Business Days after the Effective Date (the "Deposit Deadline") as follows: (*select one*)

(a) [X] directly with Escrow;
(b) □ directly into Buyer's Agent's Firm's client trust account and remain there until disbursement at Closing;
(c) □ directly into Buyer's Agent's Firm's client trust account, followed by deposit with Escrow/Title Company before Closing; and/or
(d) □ as follows: (*describe*) ____________________________________________

31.2. Additional Deposit. If an Additional Deposit is to be paid, it will be deposited by (*insert date*) ____________________ or □ other (*describe*) ____________________________________________ (the "Additional Deposit Deadline") as follows: (*select one*)

(a) □ directly with Escrow;
(b) □ directly into Buyer's Agent's Firm's client trust account and remain there until disbursement at Closing;
(c) □ directly into Buyer's Agent's Firm's client trust account, followed by deposit with Escrow/Title Company before Closing; and/or
(d) □ as follows: (*describe*) ____________________________________________

31.3. Breach of Earnest Money. Buyer's failure to place the Deposit and/or Additional Deposit, as described above, by no later than 5:00 p.m. on the last day of the Deposit Deadline and/or Additional Deposit Deadline, will be considered a breach of Section 32.2 (Earnest Money Payment to Seller).

Buyer's withdrawal or attempted withdrawal of one or both Deposits, except as authorized by Seller or in accordance with this Agreement, will be considered a breach of this Agreement, will result in a forfeit of the Deposit, and, at the option of the Seller, termination of this Agreement.

32. EARNEST MONEY DEPOSIT INSTRUCTIONS TO ESCROW: Buyer and Seller instruct Escrow as follows: upon your receipt of a copy of this Agreement signed by Buyer and Seller, establish an escrow account and proceed with Closing in accordance with the terms of this Agreement. If you determine the transaction cannot be Closed for any reason (whether or not there is a dispute between Buyer and Seller) you are to hold all Deposits until you receive written instructions from Buyer and Seller, or a final ruling from a court or arbitrator, as to the disposition of the Deposits.

32.1. Earnest Money Refund to Buyer. All Deposits will be promptly refunded to Buyer if (a) Seller signs and accepts this Agreement but fails to furnish marketable title; or (b) Seller fails to complete this transaction in compliance with the material terms of this Agreement; or (c) any condition which Buyer has made an express contingency in this Agreement, and has not been otherwise waived, fails through no fault of Buyer. However, Buyer's acceptance of the refund will not constitute a waiver of other legal remedies available to Buyer.

32.2. Earnest Money Payment to Seller.

The Seller's sole remedy for Buyer's failure to close this transaction in accordance with the material terms of this Agreement is limited to the Deposits. Seller's right to recover from Buyer any Deposit will be resolved as described in the Dispute Resolution Sections.

33. CLOSING: Closing will occur on a date mutually agreed on between Buyer and Seller on or before (*insert date*) October 30th (the "Closing Deadline"). Buyer and Seller acknowledge for Closing to occur by the Closing Deadline, it may be necessary to execute documents and deposit funds in Escrow before that date.

If Escrow is to prepare documents required under Section 7 (Seller-Carried Financing), Seller must notify Escrow three (3) Business Days before the Closing Deadline.

Pursuant to the TILA-RESPA Integrated Disclosure ("TRID") rule, Buyer and Seller will each receive a "Closing Disclosure" from Buyer's Lender. TRID typically requires the Closing Disclosure to be received by a buyer at least three (3) Business Days before the date the buyer signs loan documents. A change to the Closing Disclosure late in the transaction could result in a delay in Closing to comply with the three-business day rule. A delay beyond the Closing Deadline could result in termination of the transaction unless Seller and Buyer mutually agree to extend it.

34. DEED: Seller will convey marketable title to the Property by statutory warranty deed free and clear of all liens of record, except property taxes that are a lien but not yet payable, zoning ordinances, building and use restrictions, reservations in federal patents, easements, covenants, conditions and restrictions, and those matters accepted by Buyer pursuant to Section 11 (Title Insurance). Buyer is advised to secure legal advice regarding different forms of ownership and rights of survivorship. Agents are not qualified to provide advice on these issues. Once the desired form of ownership is determined, Buyer will promptly notify Escrow.

35. POSSESSION: Are one or more tenants currently in possession of the Property? (*select one*) □ Yes [X] No
If Yes: (*select one*)
(a) □ Seller will remove all tenants before Closing, pay any legally-required tenant relocation costs, and deliver possession to Buyer by 5:00p.m. on the date of Closing; or
(b) □ Buyer will accept all tenants at Closing, all rents will be prorated as of Closing, and all deposits held on behalf of tenants by Seller will be transferred to Buyer through Escrow at Closing. Buyer and Seller are encouraged to attach OREF 070 – Investment Property Addendum to address additional items related to Buyer accepting tenants at Closing.
If No, possession of the Property will be delivered to Seller by Buyer: (*select one*)
(a) [X] by 5:00 p.m. on the date of Closing;
(b) □ by (*insert time*) _______ a.m. □ p.m. ___ Calendar Days after Closing. Buyer will attach OREF 054 – Agreement to Occupy After Closing to this Agreement; or
(c) □ by (*insert time*) _______ a.m. □ p.m. on (*insert date*) ___________________. If Parties agree that Seller will deliver possession to Buyer before or after Closing, Buyer will attach OREF 053 – Agreement to Occupy Before Closing or OREF 054 – Agreement to Occupy After Closing to this Agreement.

36. PROPERTY CONDITION AT POSSESSION: Before Buyer possession, Seller will remove all of Seller's personal property, including trash, except for the items described in Section 2.2 (Personal Property). In addition, Seller will (*specify additional property conditions*)
______________________________________________________________________________
______________________________________________________________________________
__________________________. For additional property conditions at possession, see Addendum _________.

37. PRORATIONS: Rents, current year's taxes, interest on assumed obligations, and other prepaid expenses attributable to the Property will be prorated as of (*select one*) □ the Closing Date [X] the date Buyer is entitled to possession.

38. UTILITIES: Seller will pay all utility bills accrued to the date Buyer is entitled to possession. Buyer will pay Seller for heating fuel/propane on the Property on the date Buyer is entitled to possession, at Seller's supplier's rate. Payment will be handled between Buyer and Seller outside of Escrow. Seller will not terminate or disconnect electric, gas, heating fuel/propane, or water utilities before the date Buyer is entitled to possession unless the Parties agree otherwise in writing.

TAXES

39. INCOME TAX WITHHOLDING:

39.1. Oregon Withholding. Subject to certain exceptions, Escrow is required to withhold a portion of Seller's proceeds if Seller is a non-resident individual or corporation as defined under Oregon law. Buyer and Seller will cooperate with Escrow by executing and delivering any instrument, affidavit, or statement as requested, and to perform any acts reasonable or necessary to carry out the provisions of Oregon law.

39.2. Federal Withholding (FIRPTA). If Seller is a foreign person under the Foreign Investment in Real Property Tax Act ("FIRPTA"), then even if there is an exemption to FIRPTA applicability, Buyer and Seller will ask Escrow to assist the Parties with FIRPTA compliance, see OREF 092 – Advisory Regarding FIRPTA Tax. Seller's failure to comply with FIRPTA is a material default under this Agreement.

If Seller is not a foreign person, then Seller will Deliver to Escrow a certificate that complies with 26 CFR § 1.1445-2 (the "Certificate") before Closing. If Seller fails to do so, Seller will be presumed to be a foreign person, and the terms of the previous paragraph will apply. Escrow is instructed to act as a Qualified Substitute and provide Buyer with a statement that complies with 26 U.S.C. § 1445(b)(9) at Closing.

If Escrow does not agree to assist with FIRPTA compliance, including providing the form Certificate or acting as a Qualified Substitute, then either Buyer or Seller may move Escrow to another Oregon-licensed escrow agent who is willing to assist with FIRPTA compliance, in which case the Parties will equally share any cancellation fees. If due to moving escrow, this transaction cannot be Closed by the Closing Date, the Closing Date will be extended by five (5) Business Days to accommodate the move.

Seller's and Buyer's Agents are not experts in FIRPTA and will not act as a transferor or transferee agent or Qualified Substitute for purposes of the Withholding Requirement. If FIRPTA may apply in this transaction, Seller and Buyer should promptly consult their own experts familiar with FIRPTA related law and regulations. For further information, see www.irs.gov.

40. 1031 EXCHANGE: If Buyer or Seller elects to complete an exchange under Section 1031 of the Internal Revenue Code in this transaction, the other Party will cooperate with them and the accommodator, if any, as necessary to complete the exchange, so long as it will not delay the close of escrow or cause additional expense or liability to the cooperating Party. Unless otherwise provided in this Agreement, this provision will not become a contingency to the Closing of this transaction.

41. LEVY OF ADDITIONAL PROPERTY TAXES: The Property (*select one*) ☐ is [X] is not specially assessed for property taxes (for example, farm, forest, or other) in a manner that may result in the levy of additional taxes in the future. If it is specially assessed, Seller represents the Property is current as to income or other conditions required to preserve its deferred tax status. If, as a result of Buyer's actions or the Closing of this transaction, the Property either is disqualified from special use assessment or loses its deferred tax status, then unless otherwise specifically indicated in this Agreement, Buyer will be responsible for and will pay when due, any deferred and/or additional taxes and interest that may be levied against this Property, and will defend Seller against any liabilities or claims arising out of those taxes or assessments.

However, if as a result of Seller's actions before Closing, the Property either is disqualified from its entitlement to special use assessment or loses its deferred tax status, and if Seller did not disclose the upcoming disqualification or loss of status to Buyer in writing prior to Closing, Buyer may, at Buyer's sole option, promptly either: (a) terminate this transaction and receive a refund of all Deposits paid by Buyer in anticipation of Closing; or (b) close this transaction, in which event Seller will pay into escrow all deferred and/or additional taxes and interest levied or recaptured against the Property and will defend Buyer against any liabilities or claims arising out of those taxes or assessments. Nothing in this paragraph will be construed to limit Buyer's or Seller's available remedies or damages arising from a breach of this section.

42. HISTORIC PROPERTY DESIGNATION: If the Property is or may be subject to a historic property local ordinance or is subject to or may qualify for the Historic Property Special Property Tax Assessment under ORS 358.475 to 358.565, Seller will promptly provide OREF 045A – Historic Property Addendum.

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

DISPUTE RESOLUTION

43. FILING OF CLAIMS: All claims, controversies, and disputes between Seller, Buyer, Agents, and/or Firms, relating to the enforcement or interpretation of this Agreement (including those for rescission) as well as those relating to the validity or scope of the Sale Agreement, and all matters concerning the jurisdiction of the arbitrator(s) and/or Arbitration Service of Portland ("ASP"), to hear and decide questions of arbitrability (collectively, "Claims"), will be exclusively resolved in accordance with the procedures in this section, which will survive Closing or earlier termination of this transaction. All Claims will be governed exclusively by Oregon law, and venue will be placed in the county where the Property is situated. Filing a Claim for arbitration will be treated the same as filing in court for purposes of meeting any applicable statute of limitations or statute of ultimate repose, and for purposes of filing a lis pendens. By consenting to the provisions in this section, Buyer and Seller acknowledge they are giving up the constitutional right to have Claims tried by a judge or jury in state or federal court, including all issues relating to the arbitrability of Claims.

44. EXCLUSIONS: The following will not constitute Claims:

(a) any proceeding to enforce or interpret a mortgage, trust deed, land sale contract or recorded construction lien;

(b) a forcible entry and detainer action, also known as an eviction;

(c) if the matter is exclusively between REALTORS® and is otherwise required to be resolved under the Code of Ethics & Professional Standards Policies of the National Association of REALTORS®;

(d) if the matter relates to real estate compensation or fee with an Agent or Firm, and the written listing, service, or fee agreement with Buyer or Seller contains a mandatory mediation and/or arbitration provision; and

(e) filing in court for the issuance of provisional process described under the Oregon Rules of Civil Procedure; however, such filing will not constitute a waiver of the duty to utilize the dispute resolution procedures described in this Agreement.

45. SMALL CLAIMS BETWEEN BUYER AND SELLER: If the Circuit Court in the county in which the Property is located has a small claims department, all Claims between Buyer and Seller within the jurisdiction of that small claims department will be brought and decided there, in lieu of mediation, arbitration, or litigation in any other forum. If that Circuit Court does not have a small claims department, those Claims will be brought and decided in the small claims department of the applicable Justice Court. Buyer and Seller waive any rights they may have under ORS 46.455(3) or ORS 55.065(2)(c) to remove the matter from a small claims department by requesting a jury trial. A judgment in a small claims department is final and binding for all purposes, and despite the provisions of ORS 51, there is no right to appeal a small claims department judgment.

46. MEDIATION AND ARBITRATION BETWEEN BUYER AND SELLER: All Claims will first be submitted to mediation through the program administered by ASP. All Claims that have not been resolved by mediation as described in this Agreement will be submitted to final and binding arbitration in accordance with the then-existing rules of ASP. The prevailing Party in any arbitration between Buyer and Seller will be entitled to recovery of all reasonable attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees; but only if it is first established to the satisfaction of the arbitrator(s) (or judge, if applicable) that the prevailing Party offered or agreed in writing to participate in mediation before, or promptly upon, the filing for arbitration.

47. MEDIATION AND ARBITRATION INVOLVING AGENTS/FIRMS: All Claims that include Agents or their Firms, including those within the jurisdiction of a small claims department, will be resolved in accordance with the mediation and arbitration process described in Section 46. If applicable, the prevailing party will be entitled to an award of attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees, as described in that section.

DEFINITIONS/MISCELLANEOUS

48. DEFINITIONS: In addition to the other definitions in this Agreement, when the first letter of these terms is capitalized, they mean the following.

(a) Agent means Buyer's or Seller's real estate agents licensed to perform professional real estate activity in the State of Oregon.

(b) Agreement or Sale Agreement means this Residential Real Estate Sale Agreement and any written offer, counteroffer, or addendum in any form or language that adds to, amends or otherwise modifies this Agreement that has been Signed and Delivered.

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479536

(c) Business Day means Monday through Friday, except days that are recognized as official holidays by Oregon under ORS 187.010 or the United States under 5 U.S.C. § 6103.
(d) Calendar Day means any day on the calendar including weekends and holidays.
(e) Closing, Closed, and Closing Date mean when the deed or contract is recorded and funds are available to Seller.
(f) Deliver, Delivery, and Delivered means transmission of a document, either by placing it in a U.S. mailbox, taking it to the recipient's address, or placing it in the custody of a delivery service ("Manual Delivery"), or by pushing "send" or "start" on a device that sends facsimiles or in an electronic mail program ("Electronic Delivery").
(g) Deposits means the Deposit and any Additional Deposit described in Section 1 (Parties/Property Description/Price) of this Agreement.
(h) Effective Date means the date Seller and Buyer have (i) signed and accepted the Sale Agreement, and (ii) Delivered it to the other Party.
(i) Firm means the real estate company with which an Agent is affiliated.
(j) Notice means a written statement Delivered to the other Party.
(k) Notify or Notifies means delivering a Notice to the other Party or their Agent.
(l) Parties means Buyer and Seller, and "Party" means Buyer or Seller.
(m) Signed and Delivered means Seller and Buyer have (i) signed a document and (ii) Delivered it to the other Party or their Agent. When a document is "Signed and Delivered," it becomes legally binding on Buyer and Seller, and neither has the ability to withdraw it.
(n) Smart Home Features means appliances, lighting, or electronic devices that can be controlled remotely by the owner, often via a mobile app. Smart Home Features may also operate in conjunction with other devices in the home and communicate information to other smart devices.

49. MISCELLANEOUS: The following provisions govern the manner in which the terms of this Agreement will be construed.
(a) Binding Effect. This Agreement is binding on the heirs, successors, and assigns of Buyer and Seller. However, Buyer's rights and responsibilities under this Agreement or in the Property are not assignable without the prior written consent of Seller.
(b) Counterparts. This Agreement may be signed in multiple legible counterparts with the same legal effect as if all Parties signed the same document.
(c) Electronic Transmission. The sending of a signed acceptance of this Agreement via Electronic Delivery from one Party (or their Agent) to the other Party (or their Agent) will have the same effect as Manual Delivery of the signed original. If the Parties intend to use any other method for transmitting a signed offer or acceptance of the Agreement (such as regular mail, certified mail, or overnight Delivery), they should so specify at Section 29 (Additional Provisions) of this Agreement.
(d) Nonparties. Agent(s) and Firm(s) identified in the Final Agency Acknowledgment Section are not parties to this Agreement but are subject to Section 47 (Mediation and Arbitration Involving Agents/Firms).
(e) Notices. All written notices or documents required or permitted under this Agreement to be Delivered to Buyer or Seller may be Delivered to their respective Agent with the same effect as if Delivered to that Buyer or Seller. When escrow for this transaction is opened, Buyer, Seller, and their respective Agents, where applicable, will provide escrow with their preferred means of receiving Notice (for example, email or text address, facsimile number, mailing or personal delivery address, or other), which will serve as the primary location for receipt of all notices or documents (the "Notification Method"). Notice will be deemed Delivered as of the earliest of:
(i) the date and time the Notice is sent by email or fax;
(ii) the time the Notice is personally Delivered to either the Agent or the Agent's office; or
(iii) three (3) Calendar Days after the date the Notice is posted in the U.S. Mail.
(f) Time.
(i) Any reference in this Agreement to a specific time refers to the time in the time zone where the Property is located.
(ii) Time calculated
(1) in Calendar Days after the Effective Date will start on the first full Calendar Day after the Effective Date;
(2) in Business Days after the Effective Date will start on the first full Business Day after the Effective Date;
(3) in Calendar Days after a triggering event, such as Delivery of a document, will start on the first full Calendar Day after the triggering event;
(4) in Business Days after a triggering event will start on the first full Business Day after the triggering event.
(iii) If a date is calculated based on the "date Buyer is entitled to possession," and if Buyer will not be entitled to possession of the Property because one or more tenants is in possession, the "date Buyer is entitled to possession" will, for that purpose, be deemed to be the Closing Date.

Docusign Envelope ID: 52FA200C-1346-4D06-BC7F-62F208479538

(v) Unless a different time is specified in the Agreement, all deadlines for performance, measured in business or calendar days, will terminate as of 5:00 p.m. on the last day of the deadline.

SIGNATURE INSTRUCTIONS
50. OFFER TO PURCHASE: Buyer offers to purchase the Property on the terms and conditions in this Agreement. Buyer acknowledges receipt of a completely filled-in copy of this Agreement, which Buyer has fully read and understands. Buyer acknowledges that Buyer has not relied on any oral or written statement made by Seller, Seller's Agent, or Buyer's Agent that is not expressly contained in this Agreement. Because of the importance of consistent terminology and compatible documents, Buyer has chosen to use this Agreement and the other forms provided by Oregon Real Estate Forms, LLC ("OREF") for this transaction.

This offer will automatically expire on (*insert date and time*) Monday August 11th at five (5:00) □ a.m. [X] p.m. (the "Offer Deadline"). If not accepted by that time, Buyer may withdraw this offer before the Offer Deadline any time before Seller's transmission of signed acceptance. This offer may be accepted by Seller only in writing.

Buyer: ______________________
Brian D. Tormey
Date 8/10/25

Buyer: ______________________
Diana Blair
Date 8/10/25

Page 13 of 18 6010 Fern Hill Road - Purchase Contract

19. Defendant removed Logo from each page of Copyrighted Text 2.

20. Defendant removed Copyright Notice from each page of Copyrighted Text 2.

21. Defendant utilized "PDFKit," an online tool that facilitates the stripping and reformatting of text documents, to remove Plaintiff's Logo and Copyright Notices from each and every page of OREF's Copyrighted Texts. See www.pdfkit.org.

22. The "author" of Defendant's infringed versions of OREF's Copyrighted Texts bears the name "PDFKit."



23. Defendant is not and has never been licensed to use or display OREF's Copyrighted Texts.

24. Defendant never contacted Plaintiff to seek permission to use OREF's Copyrighted Texts for any other purpose.

25. Upon information and belief, Defendant located copies of OREF's Copyrighted Texts on the internet and, rather than contact Plaintiff to secure licenses, simply copied OREF's Copyrighted Texts for its own commercial use.

26. Plaintiff first discovered Defendant's unauthorized use/display of Copyrighted Texts on or about July 1, 2025.

27. Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such unauthorized use.

28. To date, Plaintiff has been unable to negotiate a reasonable license for the past infringement of OREF's Copyrighted Texts.

## COUNT I: COPYRIGHT INFRINGEMENT

29. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

30. OREF's Copyrighted Texts are original works of authorship, embodying copyrightable subject matter, and therefore subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

31. OREF owns a valid copyright in OREF's Copyrighted Texts, having registered OREF's Copyrighted Texts with the Register of Copyrights.

32. Plaintiff has standing to bring this lawsuit and assert the claim(s) herein as it has sufficient rights, title, and interest to such copyright.

33. Defendant reproduced, distributed, modified, and publicly displayed OREF's Copyrighted Texts without authorization from Plaintiff.

34. By its actions, Defendant infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, modifying, and publicly displaying OREF's Copyrighted Texts for its own commercial purposes.

35. Defendant's infringement was willful as he acted with actual knowledge or reckless disregard for whether his conduct infringed upon Plaintiff's copyright.

36. Plaintiff has been damaged as a direct and proximate result of Defendant's infringement.

37. Plaintiff is entitled to recover its actual damages resulting from Defendant's unauthorized use of OREF's Copyrighted Texts and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits from infringement of OREF's Copyrighted Texts, which amounts shall be proven at trial.

38. Alternatively, to the extent infringement by Defendant of OREF's Copyrighted Texts occurred post-registration or within the three (3) month period between first publication and registration, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

39. To the extent infringement by Defendant of OREF's Copyrighted Texts occurred post-registration or within the three (3) month period between first publication and registration, Plaintiff is further entitled to recover its costs and attorneys' fees as a result of Defendant's conduct pursuant to 17 U.S.C. § 505 for such infringement of the corresponding OREF's Copyrighted Texts.

**COUNT II: REMOVAL AND ALTERATION OF INTEGRITY OF COPYRIGHT MANAGEMENT INFORMATION PURSUANT TO 17 U.S.C. § 1202**

40. Plaintiff is informed and believes Defendant, without the permission or consent of Plaintiff, knowingly and with the intent to conceal infringement, intentionally removed the copyright management information from OREF's Copyrighted Texts before utilizing OREF's Copyrighted Texts as purported legal forms for the sale of the real property, 6010 Fern Hill Road, Monmouth, OR 97361. In doing so, Defendant violated 17 U.S.C. § 1202(a)(1) and (b)(1).

41. As a result of Defendant's actions, Plaintiff is entitled to actual damages or statutory damages pursuant to 17 U.S.C. § 1203(c), in such amount as deemed proper by the Court. Plaintiff is further entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(5).

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A declaration Defendant has infringed OREF's Copyrighted Texts;

b. A declaration such infringement is willful (to the extent applicable);

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election (to the extent applicable), an award of statutory damages for willful infringement up to $150,000.00 for infringement of each Copyrighted Text.

d. Awarding Plaintiff its costs and (if applicable) reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Permanently enjoining Defendant, his employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with Defendant, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market OREF's Copyrighted Texts or to participate or assist in any such activity; and

f. For such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims for which there is a right to jury trial.

Dated: June 26, 2026

**Deal Copyright Law, P.L.C.**

*/s/ David C. Deal*
David C. Deal
117 4th Street NE
Charlottesville, Virginia 22902
Telephone: (434) 261-2704
Email: david@dealcopyrightlaw.com
*Counsel for Plaintiff*